634 A.2d 173

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Charles Eugene CROSS, Appellant.**

Supreme Court of Pennsylvania.

Submitted July 19, 1993.

Decided Nov. 5, 1993.

Reargument Denied Feb. 8, 1994.*

* Justice Castille did not participate. See No. 127 Judicial Administration Docket No. 1.

Thomas A. Livingston, Pittsburgh, for C.E. Cross New Counsel.

William R. Hare, Beaver, Ahmed Aziz, Aliquippa, Robert A. Graci, Harrisburg, for Com.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

## *OPINION*

MONTEMURO, Justice.

This is the appeal of Charles E. Cross, appellant, from a final order of the Court of Common Pleas of Beaver County denying relief under the Post Conviction Relief Act, 42 Pa.C.S. § 9541 *et seq.* Because this is a case in which the death penalty has been imposed, jurisdiction over this appeal is conferred on this Court by 42 Pa.C.S. § 9546(d) (1988).

Appellant was convicted by a jury on March 1, 1982, for the murders of Denise Lucic and her two children, Danielle, age 7 and John, Jr., age 3. The jury found appellant guilty of three counts of first degree murder, and following a sentencing hearing, determined that aggravating circumstances out-

42

weighed any mitigating circumstances. The jury fixed the penalty at death and a direct appeal was taken to this Court. Following our mandatory review of such appeals, we affirmed the conviction and judgment of the sentence of death, *Commonwealth v. Cross*, 508 Pa. 322, 496 A.2d 1144 (1985). Appellant was scheduled to be executed on October 2, 1990.

On September 27, 1990 a stay of execution was granted, pending proceedings under the Post Conviction Relief Act (PCRA). The final petition under that act was filed on February 3, 1992. Two separate hearings were held, and on June 2, 1992, the request for post conviction relief was denied. This appeal ensued.

On appeal, appellant claims that the two lawyers representing him were ineffective in five areas. First, he contends that his attorneys were ineffective because of their failure to develop and present a defense based on insanity or diminished capacity. Second, he asserts that counsel were ineffective for failing to fully explore appellant's family background and mental history during the sentencing phase of the trial, and as a result failed to present evidence of mitigating circumstances. Third, appellant asserts that counsel were ineffective for failure to request a jury instruction correcting a misstatement made by appellant in the sentencing phase of the trial.

In addition to these alleged constitutional deficiencies in appellant's representation, appellant's fourth claim charges his lawyers with ineffectiveness for failing to adequately preserve, for appellate review, counsels' objection to the trial court's charge to the jury. Finally, appellant contends that his attorneys were ineffective because they failed to object to the verdict slip submitted to the jury.

For the first time in this appeal, appellant also asserts that if this Court determines that the death penalty hearing was defective, then a sentence of life imprisonment should be entered. In essence, appellant contends that 42 Pa.C.S.A. § 9711(h)(2), as amended, should not apply to him. This section provides that upon a showing that the death penalty

hearing was defective, the Supreme Court shall remand for a new sentencing hearing.

In order for appellant to establish a claim of ineffective assistance of counsel, he must first demonstrate that the underlying claim is of arguable merit. Once that is established, he must then show that his lawyer's action or inaction lacked any reasonable basis for advancing his client's interests. In addition, appellant must demonstrate that the commission or omission of counsel so undermined the trial that the verdict is unreliable. *Commonwealth v. Carpenter*, 533 Pa. 40, 617 A.2d 1263 (1992).

The presumption is that counsel is effective. *Commonwealth v. Pierce*, 515 Pa. 153, 159, 527 A.2d 973, 975 (1987), citing *Commonwealth v. Miller*, 494 Pa. 229, 431 A.2d 233 (1981). The burden of proving ineffectiveness of counsel is on the party alleging it, and that burden does not shift. *Commonwealth v. Jones*, 324 Pa.Super. 359, 471 A.2d 879 (1984).

We review appellant's claims of ineffective assistance of counsel guided by these standards. After considering each claim individually, we conclude that appellant's claims are without basis, and therefore affirm the order of the trial court denying PCRA relief.

Appellant first argues that his lawyers were constitutionally deficient because they did not introduce evidence of appellant's insanity or diminished capacity during the guilt phase of appellant's murder trial. Throughout both the guilt phase and the sentencing phase of the trial, appellant maintained his innocence. To have introduced evidence of appellant's insanity or diminished capacity would have directly conflicted with appellant's position of innocence. To plead the defense of insanity suggests that the defendant committed the act, but was not legally culpable. *Commonwealth v. Mizell*, 493 Pa. 161, 164, 425 A.2d 424, 426 (1981). Here, appellant maintained that he had not committed the murders. Therefore, it would have been improper for his attorneys to introduce any evidence of insanity.

44

■ In *Mizell* this Court determined that trial counsel had acted properly in not advancing an insanity defense when the lucid defendant had insisted upon his innocence, and had refused to submit to a psychological examination. *Mizell,* 493 Pa. at 164, 425 A.2d at 426. It is now argued that counsel erred by yielding to appellant's decision to plead innocence rather than insanity or diminished capacity. He claims that he was not sufficiently rational to make that type of decision regarding his defense. Moreover, he asserts that his lawyers were aware of his psychological deficiencies, and should have defied his instruction and pursued an insanity defense. These contentions are without merit.

First, Rule 1.2 of the Pennsylvania Rules of Professional Conduct provides in part:

(a) A Lawyer shall abide by a client's decisions concerning the objectives of representation, ... and shall consult with the client as to the means by which they are to be pursued ... In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

The Comment to Rule 1.2 provides in part:

The client has ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations.

Both the Rule and the Comment make clear that the client is to decide the goal of counsel's representation. Moreover, the Rule does not furnish counsel with the right to override what the client considers to be in his best interest. This is particularly true where it has been determined that the client is competent to stand trial.

■ To be competent for trial a defendant must be capable of understanding the nature and objective of proceedings against him, and be able to cooperate with his legal representative in presentation of his defense. *Commonwealth v. Martinez,* 498 Pa. 387, 446 A.2d 899 (1982). A determination of competency to stand trial would support a determina-

tion that appellant was equipped with the same "lucidity" required under *Mizell.* Hence, appellant was mentally capable of making decisions about his defense, and counsel properly complied with his wishes regarding the goals of his representation.

■ As a subordinate argument, appellant claims that his attorneys were ineffective because they failed to further investigate appellant's family background and mental competency. Appellant presents this claim in two contexts. First, he asserts that his attorneys failed to investigate fully appellant's mental competency. Then, he asserts that they failed to properly develop, through testimony in the sentencing phase of the trial, appellant's troubled childhood. These claims are also without merit.

Counsel commissioned Dr. Eberle, a noted forensic psychologist, to examine and evaluate appellant. The psychological report equipped counsel with the information necessary to present a constitutionally effective defense. Dr. Eberle evaluated appellant's current mental status and psychodynamic profile. In addition, he assisted in making the determination that appellant was competent to stand trial. Dr. Eberle also evaluated appellant to determine if there were any possible consistencies between appellant's personality profile/type and criminal tendencies or capacity for prevarication.

Exploration into appellant's criminal responsibility would have been pointless since the defense of insanity or diminished capacity was not going to be used. In fact, it was impossible, according to Dr. Eberle, to make that determination while appellant maintained his innocence. Therefore, the investigation taken by counsel was constitutionally sufficient.

■ Appellant next contends that his attorneys were ineffective for failing to investigate and fully present the appellant's family background and mental history during the sentencing phase of the trial. Appellant asserts that they failed to fully develop his family background by not interviewing appellant's brother and sisters. Moreover, appellant argues that trial counsel should have called appellant's sister, Rose

Luchan, to testify as to the traumatic nature of appellant's childhood during the penalty phase of the trial.

We must determine whether counsel's performance in evaluating the mitigating evidence available to him and in deciding not to pursue further mitigating evidence undermines confidence in the adversarial process of this case. *Burger v. Kemp*, 483 U.S. 776, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987). In this determination, we must be highly deferential to the decisions of counsel. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In preparation of appellant's defense, at both the guilt phase and the sentencing phase, appellant's lawyers investigated appellant's family background and social history. The psychological report commissioned from Dr. Eberle, mentioned above, also developed appellant's family background, and detailed aspects of his troubled childhood. Moreover, counsel spoke with both appellant Cross and his sister regarding his background. Counsel did not interview appellant's other siblings.

Appellant contends that his lawyers' failure to contact his other siblings was error. However, appellant does not specify what mitigating information they could have added to assist in his defense, other than to provide cumulative evidence of his childhood. Therefore, considering ineffectiveness of counsel based upon their omitted testimony is too tenuous and speculative. *Commonwealth v. Blagman*, 350 Pa.Super. 367, 504 A.2d 883 (1986), appeal denied 514 Pa. 645, 524 A.2d 492 (1987).

Appellant suggests that the investigation undertaken by counsel was insufficient to equip them with information sufficient to present mitigating factors at the penalty phase. Appellant's attorneys did present four mitigating factors during the sentencing phase. The four mitigating circumstances presented pursuant to 42 Pa.C.S.A. § 9711 were: Section 9711(e)(1), the defendant had no significant history of prior criminal convictions; Section 9711(e)(2), the defendant was under the influence of extreme mental or emotional distur-

bance at the time of the offense; Section 9711(e)(3), the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired; and Section 9711(e)(8), other mitigating circumstances. Appellant's lawyers presented these mitigating circumstances through the testimony of appellant Cross and Dr. Eberle. Counsel did not call appellant's sister, Rose Luchan, to testify, nor did they direct specific questions about appellant's childhood to either appellant or Dr. Eberle.

This tactic taken by appellant's attorneys was reasonable in light of the brutal nature of the murders. Trial counsel believed that the proposed evidence would have little potency. Moreover, counsel believed that introducing evidence of appellant's childhood difficulties would be perceived by the jury as trivializing the murders. This strategy was reasonable in order to avoid the possible perception that appellant did not appreciate the gravity of the crimes. Therefore, counsels' development of mitigating circumstances was well within the range of professionally competent assistance constitutionally required.

Appellant's third claim of ineffective assistance of legal representation is based upon the assertion that trial counsel did not ask for a jury instruction which would correct a misstatement appellant had made about the possibility of receiving parole.

During the penalty phase of the trial, appellant did make reference to the possibility of being paroled if he was given a life sentence rather than death.[1] Appellant argues that the

1. Appellant statement at the penalty phase of the trial was as follows:

> This jury of twelve people have found me guilty of a crime that I did not commit. I stand before God Almighty as an innocent man. While you founded me guilty the guilty parties are still on the street. Eventually they are going to kill again. When they kill again possibly a confession could come forth. If you send me to the electric chair it wouldn't help me any. If you send me to a penitentiary for life, at least I could be released and get on with my life. I plead with this jury that you come back with a life sentence. And it is going to be a long sentence since I have time waiting for me in virginia of fifteen years. From my understanding I will spend twenty years before I am

48

jury's fear of the possibility of his parole caused them to enter a sentence of death. Although appellant was not correct in his statement that he would be eligible for parole if given a sentence of life imprisonment, the record reveals this to have been a calculated strategy on the part of appellant to evoke sympathy from the jury, and another example of appellant's attempting to avoid responsibility for decisions he made regarding the objectives of his trial. Appellant chose to offer that testimony in the hope of engendering compassion from the jury. Now he would have us hold that his legal representatives were ineffective for adhering to their client's choice. In addition, counsel discussed this misstatement with appellant upon the completion of his testimony; they decided in concert, that no harm had resulted, and that nothing should be done about it.

Appellant's misstatement did not undermine the validity of the penalty imposed. Moreover, counsel's decision not to take action was rational. Therefore, appellant has not met the burden of proof necessary to grant relief under the PCRA.

 Appellant also asserts that his attorneys were ineffective for failing to object to and adequately preserve for review two issues regarding the trial court's jury instructions. First, appellant contends that counsel were ineffective because they did not object to the trial court's instruction to the jury that the Commonwealth's expert witnesses were not permitted to examine petitioner until after the verdicts of guilty. Appellant's petition maintains that this was an impermissible comment upon his silence in violation of Article 1, Section 9 of the Pennsylvania Constitution and the Fifth Amendment.

This argument is without merit. The instruction merely explains why the examinations were not performed by the doctors at an earlier time. It in no way suggests that appellant was asserting his right to remain silent.

Since the underlying argument is without merit, it would have been futile for appellant's lawyers to object to the

eligible for parole here. That's thirty-five years I will be spending behind bars. I have nothing more to say. Just have mercy on me.

instruction. Therefore, no ineffective assistance of counsel claim will stand based upon this argument.

Second, appellant asserts that counsel were ineffective because they failed to raise on appeal the question of whether the Court of Common Pleas erred by failing to instruct the jury in a manner consistent with 42 Pa.C.S.A. § 9711(c)(1)(v). This section provides in relevant part:

> [T]he court may, in its discretion, discharge the jury if it is of the opinion that further deliberation will not result in a unanimous agreement as to the sentence, in which case the court shall sentence the defendant to life imprisonment.

Again, the ineffective assistance of counsel claim based upon this issue is without merit. This particular section is intended to give guidance to the court in cases where a jury is unable to reach a verdict after having spent a period of time deliberating. Since a request to have this instruction read would have been denied, defense counsel was not ineffective for failing to advance this argument.

Appellant contends that his attorneys were ineffective for failing to object to the verdict slip submitted to the jury. Appellant asserts that the verdict slip was constitutionally deficient because it did not require the jury to make findings as to mitigating circumstances. While we now require the verdict form to include a space for the jury to list mitigating circumstances, it was not required when appellant was sentenced. PA.R.CRIM.P. 358A. Moreover, we have held that the Sentencing Code does not require the jury to specify the mitigating circumstances it found. *Commonwealth v. Crispell*, 530 Pa. 234, 608 A.2d 18 (1992), citing *Commonwealth v. Carpenter*, 511 Pa. 429, 515 A.2d 531 (1986). Therefore, the verdict slip was adequate at the time of appellant's sentencing, and any objection to the slip would have been denied. In addition, the adequacy of the verdict slip was addressed in appellant's application for extraordinary relief, which was denied by this court. Again, his argument cannot sustain a claim for ineffective assistance of counsel since his underlying claim is without merit.

50

Finally, appellant asserts that if we find that appellant's death penalty hearing was defective, then a sentence of life imprisonment should be entered. We need not address this argument since we affirm the Court of Common Pleas decision denying appellant relief.

Accordingly, the order of the Court of Common Pleas of Beaver County is affirmed.