J-S45039-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KEITH L. KAMMERDEINER, | |
| Appellant | No. 2017 WDA 2015 |

Appeal from the PCRA Order November 16, 2015
in the Court of Common Pleas of Armstrong County
Criminal Division at No.: CP-03-CR-0000748-2012

BEFORE: OLSON, J., DUBOW, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                          **FILED JULY 13, 2016**

Appellant, Keith L. Kammerdeiner, appeals from the order of November 16, 2015,[1] which dismissed, following a hearing, his first, counseled petition brought under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. On appeal, Appellant claims he received ineffective assistance of trial counsel and alleges after-discovered evidence. We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The order was signed on November 13, 2015 and filed on November 16, 2015; we have amended the caption accordingly.

We take the underlying facts and procedural history in this matter from the PCRA court's November 16, 2015 opinion and our independent review of the certified record.

> On July 18, 2013, after [a] jury trial, [Appellant] was convicted of one count each of (1) [r]ape,[2] (2) [a]ggravated [i]ndecent [a]ssault,[3] (3) [a]ggravated [i]ndecent [a]ssault—[f]orcible [c]ompulsion,[4] (4) [t]erroristic [t]hreats,[5] (5) [u]nlawful [r]estraint—[s]erious [b]odily [i]njury,[6] (6) [i]ndecent [a]ssault [w]ithout the [c]onsent of [a]nother,[7] and (7) [r]isking [c]atastrophe[.8] The charges and conviction stem from an incident in which [Appellant] is alleged to have imprisoned a former girlfriend in her home and sexually assaulted her at knifepoint (the "incident"). [Appellant also sprayed her with mace and threatened her with an operable improvised explosive device]. After trial, the Pennsylvania Sexual Offenders Assessment Board conducted an evaluation of [Appellant], ultimately concluding that he did not qualify as a sexually-violent predator. On December 24, 2013, the [trial c]ourt sentenced [Appellant] to a term of incarceration of [not less than one hundred and eight] months [nor more than two hundred and sixteen] months on the rape charge and [not less than twelve] months [nor more than twenty-four] months on the risking catastrophe charge, the sentences to run consecutively. The remaining counts were either merged into the rape charge

_____

[2] 18 Pa.C.S.A. § 3121(a)(2).

[3] 18 Pa.C.S.A. § 2702(a)(4).

[4] 18 Pa.C.S.A. § 3125(a)(2).

[5] 18 Pa.C.S.A. § 2706(a)(1).

[6] 18 Pa.C.S.A. § 2902(a)(1).

[7] 18 Pa.C.S.A. § 3126(a)(1).

[8] 18 Pa.C.S.A. § 3302(b).

or their sentences were ordered to run concurrently with the rape sentence. Thus, [Appellant's] aggregate sentence is a term of incarceration of [not less than one hundred and twenty] months [nor more than two hundred and forty] months, or [ten] to [twenty] years.

[Appellant] filed a post-sentence motion on October 3, 2013. In the motion, [Appellant] argued that the Commonwealth was in possession of a cellular phone[a] containing exculpatory evidence, namely, text messages between [Appellant] and the victim the day prior to the incident, in which the victim expressed a desire to marry [Appellant]. [Appellant] requested a new trial based on what he essentially argued was a *Brady*[9] violation by the Commonwealth. He also moved to modify the sentence on the rape charge, which he asserted was excessive because of his "mental health status." The [trial c]ourt held a hearing on November 4, 2013, and denied the motion by [m]emorandum and [o]rder entered December 18, 2013.

> [a] It is not clear whether the cellular phone at issue was owned by [Appellant] or the victim. It is undisputed, however, that [Appellant] was in possession of the phone after the incident and disposed of it along State Route 28, where he would later take police to recover it.

In its [m]emorandum, the [trial c]ourt noted that if indeed the cellular phone contained text messages from the victim to [Appellant] expressing a desire to marry, those texts clearly would be exculpatory. In discussing the *Brady* claim, the [trial c]ourt stated as follows:

> The question is, was the alleged text from the victim to [Appellant] expressing a desire to marry him, exculpatory or impeachment evidence?
>
> The answer is yes. At trial, the victim testified that she had broken up with [Appellant] in April of 2012 and had rebuffed [Appellant's] subsequent attempts

---

[9] *Brady v. Maryland*, 373 U.S. 83 (1963).

- 3 -

to get back together. The victim further testified that [Appellant] had forced her to engage in sexual acts on October 11, 2012 and that the acts were not consensual.

By contrast, [Appellant] testified that the day before the incident, the victim had met with him and discussed the possibility of them getting back together. Most important, [Appellant] claimed that the victim had initiated their sexual activity on October 11, 2012 and that the sexual activity was consensual.

The issue of whether the sexual acts were consensual was crucial. Thus, evidence that just days before, the victim had sent [Appellant] a text saying that she wanted to marry him clearly would have supported [Appellant's] claims of innocence at trial regarding the charges of rape, aggravated indecent assault and indecent assault.

However, in ultimately rejecting [Appellant's] **Brady** claim, the [trial c]ourt noted that [Appellant] did not mention the text messages in his testimony at trial and stated at the hearing that he did not mention their existence to his attorney until sentencing. The [trial c]ourt also concluded that the Commonwealth had not violated its duty to provide the text messages because the cellular phone was inoperable. The [trial c]ourt further denied [Appellant's] request that his sentence be modified, finding that the sentence imposed was within the standard range and served both the interests of society and the victim.

[Appellant] did not file a direct appeal. On October 3, 2014, he filed a timely *pro se* PCRA petition, alleging ineffective assistance of counsel. The [PCRA c]ourt appointed PCRA counsel, who filed an amended petition on April 23, 2015, and a second amended petition on May 27, 2015. At the hearing on September 16 and 17, 2015, [Appellant] testified and presented the testimony of his trial counsel, Attorney James H. Wray. The evidence is summarized as follows.

At approximately 5:02 p.m. on October 11, 2012, the date of the incident, [Appellant] was admitted to the emergency

department at UPMC Mercy Hospital. [Appellant's] medical records, which appear to have been first requested on June 19, 2015 by [Appellant's] PCRA counsel, indicate that [Appellant] was diagnosed at his admission with "Altered Mental Status" with a principal diagnosis of "psychosis." The treating physician indicates in his notes that upon examination, [Appellant] was "very withdrawn and somewhat tearful. He states that he does not know why he is here and appears to be mildly confused. He states that he is having racing thoughts, although he denies auditory hallucinations." The doctor goes on to note that [Appellant] "is not oriented to place and time" and that he "denies any suicidal or homicidal ideation." The doctor also notes that [Appellant] appeared to be suffering from "emotional withdrawal." Ultimately, [Appellant] was admitted to the psychiatric emergency department for overnight observation, after which he was to be assessed by a psychiatrist the following day.

Presumably, [Appellant] was picked up and placed under arrest by the police before any such assessment was performed. All of the drug toxicity tests performed at Mercy Hospital were negative.

[Appellant] testified that he had been diagnosed with depression both before his trial and since, at times sustaining psychotic episodes. He also testified, however, that Attorney Wray did not know of his condition prior to and at trial. Attorney Wray did not request [Appellant's] mental health records from Mercy Hospital and did not request that [Appellant] undergo a mental health evaluation prior to trial. [Appellant] also testified that he and Attorney Wray did not discuss his mental health status throughout their preparation for trial, with the exception of [Appellant's] statement to Attorney Wray that he was "depressed." [Appellant] does not recall whether he ever told Attorney Wray about his hospitalization at Mercy. [Appellant] did not recall when he first told Attorney Wray about the text messages on the cellular phone, but does remember telling him to try and find the phone. [Appellant] recalls discovering that the phone did not work.

Attorney Wray has been practicing criminal law since 1986 and has worked as both a public defender and an assistant district attorney. He also has tried criminal cases in private practice. Attorney Wray testified that he met with [Appellant]

approximately five times prior to trial to prepare the defense. During those meetings, Attorney Wray observed that [Appellant] was lucid and conversant and did not show any signs of being unable to assist in his defense. He admittedly did not request [Appellant's] medical records from Mercy Hospital and testified that he would not have done so even if he had been aware that they existed, chiefly because [Appellant] appeared competent during all of their meetings. For similar reasons, he did not request a mental health evaluation. Attorney Wray testified that [Appellant] insisted throughout trial preparation that the sexual activity between him and the victim was consensual and showed no interest in pursuing any other type of defense.

With regard to [Appellant's] ability to assist in his case, Attorney Wray testified that [Appellant] was always able to contribute and did, in fact, assist in developing trial strategy. Although [Appellant] engaged in somewhat erratic behavior at his preliminary hearing, his behavior on the day of trial was much more outlandish and was the first indication to Attorney Wray that he might not be able to continue with the trial. [Appellant] had become ill during trial on two occasions and had passed out in the restroom. After the second incident, the [trial c]ourt asked [Appellant] whether he could continue, and [Appellant] stated that he was able to finish. Attorney Wray stated to the [trial c]ourt that he was not confident that [Appellant] was able to participate effectively in the trial given his behavior and moved for a mistrial. The [trial c]ourt permitted the trial to proceed, relying on [Appellant's] own statements that he was suffering only from anxiety. After trial, but prior to sentencing, [Appellant] met with a probation officer to provide information for [Appellant's pre-sentence investigation report ("PSI"). The probation officer noted that conversing with [Appellant] was difficult because of what he perceived to be mental health issues.[b]

> [b] The PSI report was not made part of the record at the PCRA hearing. The [PCRA c]ourt is aware of the probation officer's comments only because PCRA counsel alluded to the comments during the hearing.

With regard to the cellular phone text messages, Attorney Wray testified that [Appellant] did not make him aware of the messages until either very close to or at trial. The phone had been listed in the inventory provided to Attorney Wray in

discovery, but he at that point did not have any knowledge as to its contents. When Attorney Wray inquired about the phone with the Pennsylvania State Police ("PSP") , Trooper Michael Kapustik told him that the phone was inoperable. At trial, [Appellant] did not mention the messages in his testimony and referred to the day before the incident only in passing. Attorney Wray raised the issue of the text messages in his post-sentence motion, but at that point, the phone remained inoperable and the messages were not recovered.

After [Appellant] filed his PCRA petition, his PCRA counsel contacted the PSP and again inquired about the phone. The PSP reiterated that the phone was inoperable and they were not able to retrieve any of its contents. Counsel then traveled to the PSP barracks to investigate. When she arrived, the PSP had plugged the phone into a charger and it became functional. A transcript of the text messages were then sent to PCRA counsel.

The messages introduced at the PCRA hearing begin the morning of October 10, 2012, and continue through the evening. There is a single text message the afternoon of October 11, 2012, after the incident had occurred. The messages all are between [Appellant] and the victim and cover various subjects, including arrangements for breakfast and long discussions about their prior relationship and sexual activities. The messages generally are friendly and bantering in nature, but at times they also grow quite tense. The victim tells [Appellant] that she would let him live on her property and that she loves him. She also refers to an "ass grab" at their breakfast meeting. The remaining messages largely are composed of [Appellant's] solicitations of sex, which the victim consistently rebuffs. At one point, the victim tells [Appellant] that she will live with him and marry him if he can answer a particular question, which appears to be related to why the victim still wears certain gifts that [Appellant] gave to her. The last message in the thread was sent by [Appellant] at 2:52 p.m. on October 11, 2012, in which he states, "Goodbye guess u really didn't care if I die."

(PCRA Court Opinion, 11/16/15, at 1-9) (record citations omitted).

On November 16, 2015, the PCRA court denied Appellant's petition.

The instant, timely appeal followed. On December 21, 2015, the PCRA court

ordered Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on January 8, 2016. *See id.* On January 26, 2016, the PCRA court issued a memorandum adopting its earlier opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review:

> I. Whether the denial of Appellant's second amended petition for post-conviction collateral relief was in error when the PC[RA] court found the trial attorney effective?
>
> II. Whether the denial of a new trial asked for in Appellant's second amended petition for post-conviction collateral relief based on after discovered exculpatory evidence was in error?

(Appellant's Brief, at 2) (unnecessary capitalization omitted).

Here, Appellant claims that the PCRA court erred in denying his PCRA petition. It is long settled that "[o]ur standard of review from the grant or denial of post-conviction relief is limited to examining whether the PCRA court's determination is supported by the evidence of record and whether it is free of legal error. We will not disturb findings that are supported by the record." *Commonwealth v. Ousley*, 21 A.3d 1238, 1242 (Pa. Super. 2011), *appeal denied*, 30 A.3d 487 (Pa. 2011) (citations omitted). "The court's scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party." *Commonwealth v. Duffey*, 889 A.2d 56, 61 (Pa. 2005) (citation omitted). Further, to be eligible for relief

- 8 -

pursuant to the PCRA, Appellant must establish that his conviction or sentence resulted from one or more of the enumerated errors or defects found in Section § 9543(a)(2). He must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. **See** 42 Pa.C.S.A. § 9543(a)(3). An allegation of error "is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b).

Appellant first alleges that he received ineffective assistance of trial counsel. (**See** Appellant's Brief, at 7-10). Specifically, in his first issue Appellant contends that trial counsel was ineffective for not obtaining information regarding his mental health status and for not undertaking a more thorough investigation of the cell phone. (**See id.**). We disagree.

Counsel is presumed effective, and an appellant bears the burden to prove otherwise. **See Commonwealth v. McDermitt**, 66 A.3d 810, 813 (Pa. Super. 2013). The test for ineffective assistance of counsel is the same under both the Federal and Pennsylvania Constitutions. **See Strickland v. Washington**, 466 U.S. 668, 687 (1984); **Commonwealth v. Jones**, 815 A.2d 598, 611 (Pa. 2002). An appellant must demonstrate that: (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and (3) but for counsel's ineffectiveness, there is a

reasonable probability that the outcome of the proceedings would have been different. *See Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001), *abrogated on other grounds by* *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Jones*, *supra* at 611 (citation omitted).

Here, Appellant argues that counsel either knew or should have known that he "clearly had mental health issues." (Appellant's Brief at 7). He further claims that, had counsel investigated his mental health history, he could have raised a viable mental health defense and been found not guilty by reason of insanity. (*See id.* at 8). We disagree.

Initially we note that in order to be found not guilty by reason of insanity, a defendant must prove:

> that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong.

18 Pa.C.S.A. § 315(b). Further, when the defendant does not present a defense of insanity, he cannot present evidence in support of finding him guilty but mentally ill. *See Commonwealth v. Henry*, 569 A.2d 929, 935-36 (Pa. 1990), *cert. denied*, 499 U.S. 931 (1991), *abrogated on other grounds by* *Commonwealth v. Wilson*, 861 A.2d 919, 933 (Pa. 2004); *Commonwealth v. Sasse*, 921 A.2d 1229, 1238 n.6 (Pa. Super. 2007), *appeal denied*, 938 A.2d 1052 (Pa. 2007).

In the instant matter, as discussed by the PCRA court in its opinion, counsel suggested presenting an insanity defense, but Appellant refused to consider it because he wanted to claim that the sex was consensual. (**See** PCRA Ct. Op., at 6-7; **see also** N.T. PCRA Hearing, 9/16-17/15, at 30-31, 46-47). Our Supreme Court has found that counsel was not ineffective for not overriding the client's wishes in order to present an insanity defense. **See Commonwealth v. Cross**, 634 A.2d 173, 175 (Pa. 1993), *cert. denied*, 513 U.S. 833 (1994), In **Cross**, the Pennsylvania Supreme Court stated:

> . . . To plead the defense of insanity suggests that the defendant committed the act, but was not legally culpable. Here, appellant maintained that he had not committed the murders. Therefore, it would have been improper for his attorneys to introduce any evidence of insanity.

> \*    \*    \*

> Both the [Pennsylvania Rules of Professional Conduct] and the Comment [to it] make clear that the client is to decide the goal of counsel's representation. Moreover, the Rule does not furnish counsel with the right to override what the client considers to be in his best interest. This is particularly true where it has been determined that the client is competent to stand trial.

> To be competent for trial a defendant must be capable of understanding the nature and objective of proceedings against him, and be able to cooperate with his legal representative in presentation of his defense. A determination of competency to stand trial would support a determination that appellant was equipped with the same "lucidity" required under [**Commonwealth v.**] **Mizell** [,425 A.2d 424, 426 (Pa. 1981)]. Hence, appellant was mentally capable of making decisions about his defense, and counsel properly complied with his wishes regarding the goals of his representation.

**Id.** at 175-76 (some citations omitted).

- 11 -

Here, as discussed above, the uncontradicted evidence at the PCRA hearing demonstrated that Appellant did not want to consider an insanity defense because he wanted to argue consent. (*See* N.T. PCRA Hearing, 11/16/15, at 30-31, 46-47). We will not find counsel ineffective for declining to override the client's express wishes to pursue the defense of consent rather than an insanity defense in the absence of evidence that Appellant was incompetent to stand trial, which is not present in the instant matter. *See Cross*, *supra* at 175-76.

Moreover, even if Appellant had not foreclosed the possibility of a mental health defense, we note that the record is singularly devoid of any evidence that supports Appellant's claim that he had long-term, on-going mental health issues prior to the date of the incident. Appellant has failed to produce any psychiatric or psychological records, prescriptions for psychotropic medication, or any testimony from a mental health professional in support of his self-serving claim that he had been previously diagnosed with "[m]ajor depression with psychotic episodes." (N.T. PCRA Hearing, 9/16-17/15, at 12). Further, Appellant admitted that he had not informed counsel of any mental health problems, other than stating he felt "depressed", and counsel testified that he had not observed any behavior during his meetings with Appellant that would have alerted him to any mental health problems. (*See id.* at 21; *see id.* at 12, 30, 46). Also, the sole documentary evidence in support of Appellant's claim, the medical

records from the Mercy Hospital Psychiatric Unit,[10] demonstrate, at most, that, in the hours after the incident, Appellant exhibited a sufficiently altered mental health status for an emergency room doctor to admit him for observation and a psychiatric evaluation, which evidently did not occur. (*See* Appellant's PCRA Exhibit B, UPMC Emergency Room Evaluation, 10/11/12, at 2, 8-9). Lastly, Appellant's claims of bizarre behavior at trial, (*see* Appellant's Brief, at 7), are simply not supported by the record. While the record shows that Appellant became physically ill during trial, eventually fainting, (*see* N.T. Trial, 7/18/13, at 30, 49-54), he attributed his physical condition to nervousness. (*See id.* at 52). When questioned by the court, Appellant unequivocally stated that he wanted the trial to proceed that day. (*See id.*). There is nothing in the record that supports Appellant's contention that his behavior at trial in any way reflected on-going mental

_____

[10] Appellant also contends that the report of his interview with the Pennsylvania State Police and the PSI support his contention of serious mental health problems. (*See* Appellant's Brief, at 7). However, as the PCRA Court noted, neither document was entered into evidence at the PCRA hearing. (*See* PCRA Ct. Op., at 8 n.2, 15 n.4). Thus, they are not included in the certified record. While Appellant has appended these documents to his brief, this Court has consistently stated that copying material and attaching it to the brief does not make it a part of the certified record. *See First Union Nat. Bank v. F.A. Realty Investors Corp.*, 812 A.2d 719, 724 n.3 (Pa. Super. 2002); *In re M.T.*, 607 A.2d 271, 275 (Pa. Super. 1992). Appellant is referred to Pa.R.A.P. 1926, which delineates the proper method for supplementing the record and we will disregard the PSI and Pennsylvania State Police Reports attached to Appellant's brief.

health issues.[11]  Appellant's contention that counsel was ineffective for failing to investigate a meritorious mental health defense is without merit, because Appellant has not shown he had on-going mental health problems. *See Jones*, *supra* at 611.

Appellant also contends that counsel was ineffective for not conducting a more thorough investigation into the cell phone.  (*See* Appellant's Brief, at 10).  We disagree, as the PCRA court stated:

> "Counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render particular investigations unnecessary." *Commonwealth v. Basemore*, 744 A.2d 717, 735 (Pa. 2000).  "Counsel's unreasonable failure to prepare for trial is an abdication of the minimum performance required of defense counsel." *Commonwealth v. Brooks*, 839 A.2d 245, 248 (Pa. 2003) (quoting *Commonwealth v. Perry*, 644 A.2d 705, 709 (Pa. 1994)).  The reasonableness of a particular investigation "depends upon evidence known to counsel, as well as evidence that would cause a reasonable attorney to conduct a further investigation." *Commonwealth v. Hughes*, 865 A.2d 761 (Pa. 2004).
>
> [Appellant] argues that Attorney Wray was ineffective because he failed to further request the production of the text messages in the possession of the PSP, which he argues are exculpatory.  Had Attorney Wray obtained the text messages prior to trial, [Appellant] contends, the outcome of the trial "most certainly would have been different."  We disagree.
>
> As to arguable merit, there is no indication that Attorney Wray, upon further investigation, would have been able to obtain

---

[11] During the PCRA hearing, Attorney Wray testified that Appellant behaved oddly during trial.  (*See* N.T. PCRA Hearing, 9/16-17/15, at 36-37, 48-49).  However, Attorney Wray never details the behavior he is referring to and, again, there is nothing in the trial transcript which supports this contention.

the text messages from the cellular phone. When [Appellant] told Attorney Wray of the messages' existence, he immediately asked [Pennsylvania State] Trooper Kapustik[12] whether they could be retrieved. Trooper Kapustik advised that the cellular phone was inoperable and its contents not retrievable, as had been the case since the phone was retrieved days after the incident. Although the PSP later were able to retrieve the contents of the phone upon request by [Appellant's] PCRA counsel, there is no evidence that any further efforts by Attorney Wray would have produced the same results, particularly given the timing of [Appellant's] statements about the texts. [Appellant] told Attorney Wray about the text message conversation either immediately prior to or at trial. Given time limitations and the statements from the PSP, Attorney Wray adequately investigated, to no avail, the possibility that the messages existed and were in fact exculpatory.

For the same reason, we also conclude that Attorney Wray had a reasonable basis for not traveling to the PSP barracks and attempting to turn the phone on himself, particularly given the imminence of trial. [Appellant] does not assert that the PSP or the Commonwealth intentionally withheld the messages from Attorney Wray or were disingenuous about the phone's inoperable state. There simply were no indications to Attorney Wray that the messages could be retrieved for use at trial. Without more, [Appellant] has not carried his burden to show that Attorney Wray had no reasonable basis for his actions in this regard.

Third, we also conclude that [Appellant] was not prejudiced by Attorney Wray's failure to obtain the messages. Th[e trial c]ourt did conclude previously that a message from the victim indicating a desire to marry [Appellant] would be exculpatory because it would bear significantly on the issue of the consensual nature of the sexual activity between the two on the day of the incident. However, neither the [the trial c]ourt nor Attorney Wray knew of the messages' content at the time the post-sentence motion was filed. Nor did [Appellant] testify

_____

[12] The record does not show Trooper Kapustik's first name; his last name is spelled as "Kapustic," in the PCRA hearing transcript. (N.T. PCRA Hearing, 9/16-17/15, at 45).

at trial with any specificity about the nature of the conversation between him and the victim the day before the incident. Thus, the [the trial c]ourt's conclusion that the content of the messages would be exculpatory was based on the [c]ourt's understanding that the victim expressed a genuine desire to marry [Appellant]. A close review of the text messages indicates that that was not the case.

The text messages span a period of several hours the day prior to the incident. [Appellant] and the victim discuss where they will meet for breakfast, the history of their relationship, and their current life situations. There is no doubt that the messages at times contain no small degree of sexual innuendo and outright solicitation by [Appellant]. However, the victim consistently rejects [Appellant's] requests and makes no indication that she desires to have sex with him. With regard to her statements regarding marriage, they were made by the victim in explaining why the parties' relationship ultimately ended. Taken in their appropriate context, and given the generally sarcastic nature of the victim's statements throughout the conversation, [the PCRA court does] not believe that the victim's statement that she would marry [Appellant] carried with it enough sincerity to lend any credibility to [Appellant's] consent defense. For that reason, [the PCRA court does] not believe that the text messages would have resulted in a different outcome at trial, particularly given the strength of the victim's testimony and the circumstantial evidence of the nonconsensual nature of the sex. [Appellant] thus has failed to establish the requisite prejudice to warrant relief.

(PCRA Ct. Op., at 17-20). Our review of the record with respect to this issue shows that the PCRA court's determination is supported by the evidence and is free of legal error, thus, there is no basis to disturb it. *See Ousley*, *supra* at 1242.

In his final claim, Appellant argues that the trial court erred in finding that the text messages did not constitute after-discovered exculpatory evidence pursuant to 42 Pa.C.S.A. § 9543. (*See* Appellant's Brief, at 10-13). We disagree.

Pursuant to the PCRA, an appellant may be eligible for relief based upon after-discovered evidence only if he pleads and proves that his conviction or sentence was the result of "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). Therefore, in order to obtain relief based upon subsection 9543(a)(2)(vi), an appellant must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. **See Commonwealth v. D'Amato**, 856 A.2d 806, 823 (Pa. 2004). "The test is conjunctive; the defendant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." **Commonwealth v. Padillas**, 997 A.2d 356, 363 (Pa. Super. 2010), *appeal denied*, 14 A.3d 826 (Pa. 2010) (citations omitted).

Here, Appellant has not shown that the evidence is newly discovered. The text exchange in question took place the day before the incident; the only parties to the exchange were Appellant and the victim. (**See** N.T. PCRA Hearing, 9/16-17/15, at 21). Thus, Appellant was aware of the exchange as of that date. Further, Appellant took the police to the location where he discarded the cell phone, thus he was aware that the cell phone was in

- 17 -

police possession. (**See id.** at 24). Therefore, well before trial, Appellant knew that he had engaged in a text exchange with the victim. While he might not have been able to quote the exact texts, he was aware of the specifics of the exchange, and he knew the phone was in the possession of the police. Despite this, he elected not to inform trial counsel, who had represented him since the preliminary hearing, of any of this until either the day before, or the morning of trial. (**See id.** at 32, 38-39). By that point, it was too late for counsel to do any type of detailed investigation regarding the cell phone.

> With respect to after-discovered evidence, this Court has stated:

> A defendant may unearth information that the party with the burden of proof is not required to uncover, so long as such diligence in investigation does not exceed what is reasonably expected. Thus, a defendant has a duty to bring forth any relevant evidence in his behalf. A defendant cannot claim he has discovered new evidence simply because he had not been expressly told of that evidence. Likewise, a defendant who fails to question or investigate an obvious, available source of information, cannot later claim evidence from that source constitutes newly discovered evidence. The concept of reasonable diligence is particularly relevant where the defendant fails to investigate or question a potential witness with whom he has a close, amicable relationship. Absent a plausible explanation for the failure to discover the evidence earlier, evidence obtained after trial should not be deemed after-discovered; to allow the defendant to claim information actually or constructively within his knowledge and available to him is after-discovered.

**Padillas**, **supra** at 363-64 (citations and quotation marks omitted). Here, Appellant chose not to inform counsel about an easily investigated source of allegedly exculpatory information. Therefore, he did not exercise reasonable

diligence in investigating it. His newly discovered evidence claim, therefore, must fail. ***See id.*** at 366-67 (finding trial court erred in granting new trial based on after-discovered evidence where defendant lived with potential exculpatory witness throughout period in question, knew of his possible involvement in drug deal at issue, but chose not to question him about it at trial).

Moreover, as discussed above, we have reviewed the text messages in question and agree with the PCRA court that:

> [t]aken in their appropriate context, and given the generally sarcastic nature of the victim's statements throughout the conversation, [the PCRA court does] not believe that the victim's statement that she would marry [Appellant] carried with it enough sincerity to lend any credibility to [Appellant's] consent defense. For that reason, [the PCRA court does] not believe that the text messages would have resulted in a different outcome at trial, particularly given the strength of the victim's testimony and the circumstantial evidence of the nonconsensual nature of the sex.

(PCRA Ct. Op., at 20). Thus, the messages are not exculpatory and Appellant has not demonstrated that the result of the trial would have been different, thus his claim also fails on this basis. ***See D'Amato***, ***supra*** at 823.

Further, we also agree with the PCRA court that:

> The text messages do not contain any statements from either [Appellant] or the victim [ ] regarding their sexual encounter on the day of the incident. Thus, they do not contain any substantive evidence of consent. The messages would be introduced at trial primarily, if not exclusively, to impeach the victim's testimony that the sex was forced. If the messages have any value it all, it would be to offer the jury some insight

with regard to the nature of the parties' relationship immediately prior to the incident, which at best would tend only to contradict the victim's version of what happened. For that reason, [the PCRA court] find[s] that the text messages' content, even if relevant, would only serve to impeach the victim's testimony. . . .

(PCRA Ct. Op., at 24). Thus, Appellant has not shown that the evidence is not being used solely to impeach credibility and his claim must fail on this basis as well. *See D'Amato*, *supra* at 823.

Accordingly, for the reasons discussed above we find that PCRA court's determination is supported by the evidence of record and is free of legal error. *See Ousley*, *supra* at 1242. Therefore, we affirm the denial of Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/13/2016

- 20 -