J-S46023-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
:  PENNSYLVANIA
:
v.  :
:
:
:
JOSEPH C. VIGNOLA,  :
:
Appellant  :  No. 1832 EDA 2017

Appeal from the PCRA Order April 27, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0012131-2008

BEFORE:  BOWES, J., SHOGAN, J., and KUNSELMAN, J.

MEMORANDUM BY SHOGAN, J.:    **FILED OCTOBER 15, 2018**

Appellant, Joseph C. Vignola, appeals from the order denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546.  We affirm.

The PCRA court summarized the relevant facts of this case as follows:

[Appellant] was enrolled as an Emergency Medical Technician student at Jefferson University Hospital in May of 2008. After class one day, [Appellant] asked an instructor to explain how to slice someone's throat. A few days later, [Appellant] went onto Craig's List's 'erotic services' on the internet and found the phone number of a young prostitute. [Appellant] arranged to meet Ms. India Brown at a motel on City Avenue in Philadelphia. Following sex an argument ensued and [Appellant] punched the young woman in the throat, knocking her to the floor. [Appellant] sat on the girl's chest until she was no longer breathing. Feeling no pulse, [Appellant] pulled out a knife and slit the woman's throat, got dressed, stole the money he had paid her and left the motel, leaving the young woman for dead. (N.T. 9-20-10, pp. 12-13, 17). Motel employees found the unconscious girl and called police rescue. Ms. Brown was rushed into surgery at Jefferson Hospital

where, miraculously, the doctors were able to repair her wounds and save her life. (N.T. 9-20-10, pp. 13-17).

Police detectives interviewed [Appellant] the next day wherein he claimed that Brown had been attacked by [a third-party,] a twenty year old bald black male with facial hair, approximately two hundred and forty pounds. (N.T. 9-20-10, pp. 17-23, 28-29). [Appellant] submitted to a polygraph test the following day, which he failed. [Appellant] then gave another statement to the detectives, again describing the same black male, but in this version, contended that he was in the room but [this other man ordered Appellant] to hold the victim on the ground while that [other] man slit Brown's throat. [Appellant] further claimed that after the black male left the room he checked the victim's pulse and finding none, left the motel. (N.T. 9-20-10, pp. 12-14). Following the second statement, [Appellant's] parents arrived at the police station. After being allowed to consult with his parents, [Appellant] gave a third statement confessing that he was the sole perpetrator of the attack on the young girl. [Appellant] admitted that he discarded the knife a short distance away from the motel. Police recovered the used condom from the motel room, which matched [Appellant's] DNA.

A motion to suppress was heard and denied by the trial court and four months later [Appellant] entered an open plea to the charges of aggravated assault, unlawful restraint and possession of the instruments of a crime.[1]

The original sentencing hearing was held on November 3, 2010. The court had reviewed the pre-sentence investigation report [("PSI")], a mental health evaluation and sentencing memoranda from both sides. Ms. Brown provided victim impact and the parties stipulated to testimony that less than ten hours before the attack, [Appellant] had questioned his paramedic instructor [about] breaking and cutting someone's neck. (N.T. 11-3-2010, pp. 6-9, 22-23). The Commonwealth asked for a sentence of twelve to twenty-four years because of the heinousness of the crime; the fact that [Appellant] planned the crime, including asking his paramedic instructor how to inflict the wounds he exacted; that he left the young woman on the motel floor to die; and his repeatedly lying to the police. [Appellant] presented the

_____

[1] 18 Pa.C.S. §§ 2702(a)(1), 2902(a)(1), and 907(a), respectively.

- 2 -

testimony of a licensed clinical psychologist, Dr. Steven Samuel, who diagnosed [Appellant] as having an adjustment disorder with symptoms of post-traumatic disorder, which was attributed to atrocious events allegedly suffered while attending Valley Forge Military Academy. (N.T. 11-3-2010, pp. 65-66, 143-145). According to Dr. Samuel, [Appellant] had told him that while at school he had been physically and psychologically abused. Dr. Samuel recounted the events at school that he believed to be the root of [Appellant's] Post-traumatic Stress Disorder (hereinafter referred to as "PTSD") and mental illness: [Appellant] told the doctor that cadets threw him down a flight of stairs and broke his ankle which needed a cast; that upon his return to school [Appellant] claims that other students put Vaseline on the stairway railing preventing [Appellant] from ascending or descending the stairway; that they urinated on his person and belongings; and that he was beaten so badly that … he needed to go to the infirmary several times due to having blood in his urine and several other incidents. The one event that [Appellant] relayed to Dr. Samuel that was sufficient to be the cause of his PTSD was when the cadets threw him out of a third story window. (N.T. 11-3-2010, pp. 55-96, 123-126; Dr. Samuel's report, pp. 6-7). The doctor opined that this was the only event that was traumatic enough to [Appellant] to cause his PTSD. Dr. Samuel ran a battery of tests and came to the diagnoses that [Appellant] suffered from ADHD and adjustment disorder, and displayed symptoms of PTSD. The doctor stated that although [Appellant] did not meet the current diagnosis of PTSD, he had the symptoms as of the date of the testing, and that he believed [Appellant] had PTSD at the time [of] the slashing of the young woman's throat, and that [Appellant] still had residual symptoms of the disorder. (N.T. 11-3-2010, pp. 65-69, 70-77, 106-108). Accordingly, Dr. Samuel opined that [Appellant] should not be imprisoned, but sent to a mental health program, preferably at Gaudenzia House.

[Appellant's] mother testified as to the trauma her son endured as a result of the events at Valley Forge, although the tales were quite different than what [Appellant] told Dr. Samuel. (N.T. 11-3-2010, pp. 55-96). Lastly, at the sentencing hearing, [Appellant] read a prepared statement, but was not subjected to questioning by either the prosecutor or the sentencing judge.

The trial court credited [Appellant's] contention that he suffered from PTSD, reiterated that the sentencing guidelines were fifty-four to seventy-two months and that the guidelines

were appropriate. However, the judge sentenced [Appellant] to twenty-four to forty-eight months incarceration followed by ten years' probation. (N.T. 11-3-2010, pp. 154-15[9]).

The Commonwealth filed a motion for reconsideration on November 12, 2010, which was granted and a hearing was scheduled for March 2, 2011. Counsel stipulated to the authenticity of several documents, including [Appellant's] medical records from Bryn Mawr Hospital and Valley Forge Military Academy as well as copies of the email communications between [Appellant's] parents and the school. (N.T. 3-2-2011, pp. 2-4). The prosecution argued that those documents unequivocally proved that [Appellant] and his mother had lied to both the court and Dr. Samuel; that [Appellant] had not been thrown out of a third-story window, had not been put in a cast, nor had he suffered the other allegedly traumatizing events at Valley Forge Military Academy he had claimed. As such, the Commonwealth argued, the diagnosis that at the time [Appellant] slit Brown's throat he suffered from PTSD and that he still had symptoms of that disorder was baseless, *ergo* the court's reason for imposing a mitigated sentence was negated.

[Appellant's] counsel asked to again present the testimony of Dr. Samuel but the court continued the matter to review the documents presented by the prosecution, remarking that she had given [Appellant] four to eight years[2] thinking he suffered from PTSD. (N.T. 3-2-2011, pp. 11, 30-31). The matter resumed on March 8, 2011. At that time, the prosecutor asked to admit the documents, to which defense counsel objected, moving to strike them from the record. The objection was overruled, [and] the motion [was] denied. (N.T. 3-8-2011, pp. 3-5).[3] The court

_____

[2] Although the notes of testimony reveal that the Honorable Renee Cardwell Hughes did say "four to eight years," this was a misstatement. As noted above and reflected in the record, Judge Cardwell Hughes originally sentenced Appellant to twenty-four to forty-eight months of incarceration followed by ten years of probation. N.T. 11/3/10, at 159.

[3] As this Court noted in our decision on Appellant's direct appeal, although Appellant's counsel ultimately objected, the objection was on the second day of the hearing, long after the trial court had considered the documents in question. Thus, this Court deemed the untimely objection waived.

disclosed that she had read all of the previously submitted documents and provided the parties copies of a report from the Department of Corrections, including the results of psychological testing of [Appellant].

Dr. Samuel again testified for the defense, admitting that the psychological findings by the Department of Corrections did not substantiate a finding of PTSD. Dr. Samuel further conceded that [Appellant] did not suffer from PTSD and that his prior conclusion was as a result of the information provided to him by [Appellant] and his family. The doctor did however testify that he had visited [Appellant] while incarcerated as well as reviewed his prison medical records and described for the court the lack of any counselling or treatment, a lack of any consistent medication and essentially that the prison setting [Appellant] was being subjected to was not rehabilitation in any sense. (N.T. 3-08-2011, pp. 8-13). Additionally, letters from Ms. Caroline Dupont and her son, Justin Maverick Kerakov, were submitted concerning abuse the son had suffered at Valley Forge Military Academy. Although specifically given the opportunity to address the court, [Appellant] elected not to say anything.

The judge vacated the sentences, noted that the guidelines called for a sentence of six to twelve years' incarceration, and addressed [Appellant's] presentation of false and misleading information to the court as well as to Dr. Samuel, the particular viciousness of the crime, the callousness of leaving the young woman with her throat slashed to die as well as [Appellant's] need for rehabilitation. (N.T. 3-8-2011, pp. 29-32). Accordingly, the court imposed a sentence of four to sixteen years' incarceration on the charge of aggravated assault, two and one-half to five years' incarceration for possessing the instrument of a crime and two and one-half to five years for unlawful restraint, all consecutive to one another for an aggregate sentence of nine to twenty-six years of incarceration.

PCRA Court Opinion, 9/5/17, at 2-7.

_____

*Commonwealth v. Vignola*, 53 A.3d 937, 921 EDA 2011 (Pa. Super. filed June 22, 2012) (unpublished memorandum at 10), *appeal denied*, 64 A.3d 632, 360 EAL 2012 (Pa. 2012).

On March 30, 2011, Appellant filed a timely appeal with this Court. On June 22, 2012, this Court affirmed Appellant's judgment of sentence, and the Pennsylvania Supreme Court denied allowance of appeal on April 10, 2013. **Commonwealth v. Vignola**, 53 A.3d 937, 921 EDA 2011 (Pa. Super. filed June 22, 2012) (unpublished memorandum), *appeal denied*, 64 A.3d 632, 360 EAL 2012 (Pa. 2013).

Appellant timely filed a counseled PCRA petition on April 3, 2014. On August 31, 2015, counsel filed an amended PCRA petition. The PCRA court held evidentiary hearings on Appellant's petition in February of 2017. On April 27, 2017, the PCRA court denied Appellant's PCRA petition. This timely appeal followed. On appeal, Appellant presents the following issue for this Court's consideration: "Whether the Post-Conviction Relief Act Court erred when it found that sentencing counsel provided effective assistance of counsel during the resentencing proceedings[?]" Appellant's Brief at 4.

When reviewing the propriety of an order denying PCRA relief, we consider the record in the light most favorable to the prevailing party at the PCRA level. **Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015). This Court is limited to determining whether the evidence of record supports the conclusions of the PCRA court and whether the ruling is free of legal error. **Commonwealth v. Robinson**, 139 A.3d 178, 185 (Pa. 2016).

When considering an allegation of ineffective assistance of counsel, we presume that counsel provided effective representation unless the PCRA

petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) petitioner was prejudiced by counsel's action or omission. ***Commonwealth v. Johnson***, 179 A.3d 1105, 1114 (Pa. Super. 2018) (citing ***Commonwealth v. Pierce***, 527 A.2d 973, 975-976 (Pa. 1987)). "An [ineffective-assistance-of-counsel] claim will fail if the petitioner's evidence fails to meet any one of the three prongs." ***Commonwealth v. Simpson***, 66 A.3d 253, 260 (Pa. 2013). Because courts must presume that counsel was effective, the burden of proving ineffectiveness rests with the petitioner. ***Commonwealth v. Montalvo***, 114 A.3d 401, 410 (Pa. 2015). Additionally, to be eligible for relief under the PCRA, Appellant must also establish that the issues raised in the PCRA petition have not been previously litigated or waived. 42 Pa.C.S. § 9543(a)(3). The PCRA court's findings will not be disturbed unless there is no support for them in the certified record. ***Commonwealth v. Lippert***, 85 A.3d 1095, 1100 (Pa. Super. 2014).

Appellant was initially sentenced to a term of twenty-four to forty-eight months of incarceration, followed by ten years of probation. N.T., 11/3/10, at 154-158. However, the Commonwealth filed a motion for reconsideration of Appellant's sentence. At hearings on the motion, the Commonwealth introduced evidence that refuted Appellant's claim of PTSD and established that Appellant and his mother had lied to Dr. Samuel and the trial court. N.T., 3/2/11, at 6-30; N.T., 3/8/11, at 6-32. Although Appellant's argument on

appeal is vague and conclusory, part of his assertion appears to be that counsel was ineffective for failing to challenge the admissibility of those documents.

However, in his direct appeal, Appellant challenged the admissibility of the documents evidencing Appellant's and his mother's untruthful statements. After finding Appellant's challenge to the admissibility of documents waived for failing to object, this Court provided the following alternative holding:

> Furthermore, the sentencing court found the evidence to be within the scope of the post-sentence motion, which specifically raised the issue of unsupported leniency. The leniency in question was based solely on the evidence regarding hazing and PTSD, which was the evidence refuted by the Commonwealth. Moreover, Appellant could not claim that he was surprised by the evidence. Prior to the hearing, the Commonwealth supplied Appellant's counsel with the documentation and Appellant stipulated to its authenticity. Dr. Samuel was present in court on March 2, 2011, and Appellant intended to offer his testimony at that time. However, the court continued the hearing so that it could review the documents, which also afforded the defense the benefit of additional time to address their contents.
>
> The purpose of Pa.R.Crim.P. 720[,] formerly Rule 1410[,] is to give the trial court the first opportunity to modify sentence and to give the appellate court the benefit of the trial court's views. **Commonwealth v. Anderson**, 450 A.2d 1011 (Pa.Super. 1982); **Commonwealth v. Broadie**, 489 A.2d 218, 220 (Pa.Super. 1985). The same rationale applies to Pa.R.Crim.P. 721, which requires that the Commonwealth file a post-sentence motion to preserve its challenge to a discretionary aspect of a defendant's sentence. Herein, the motion was sufficiently specific to apprise Appellant and the court that the Commonwealth believed the sentence was too lenient in light of the circumstances surrounding commission of the crime. The purpose of the evidentiary hearing was to adduce additional facts. To that end, evidence that Appellant and his mother provided false information to Dr. Samuel, which the psychologist relied upon in rendering his opinion that Appellant demonstrated symptoms of PTSD, was

properly admitted.  In addition, evidence that Appellant falsified such information was probative as to his character and clearly within the scope of the Commonwealth's motion requesting that the court reconsider the guidelines and general sentencing principles.  We find no abuse of discretion.

*Vignola*, 53 A.3d 937, 921 EDA 2011 (unpublished memorandum at 10-12).

Because this Court ruled that the documents supporting the trial court's order granting reconsideration were admissible, that decision is law of the case.  *See Commonwealth v. Reed*, 971 A.2d 1216, 1220 (Pa. 2009) ("[W]here a decision rests on two or more grounds equally valid, none may be relegated to the inferior status of *obiter dictum*.").  In other words, where this Court has issued a decision stating that even if the issue was not waived, it is meritless, that alternate basis is a valid holding and the law of the case.  *Id.*  Therefore, even if Appellant's counsel had objected, the documents would have been admitted and considered by the trial court.  Thus, Appellant's claim is meritless, and it is well settled that counsel cannot be deemed ineffective for failing to raise a meritless claim.  *Commonwealth v. Tilley*, 595 A.2d 575, 587 (Pa. 1991).

What remains in Appellant's brief is a conglomeration of claims that counsel failed to consult with Appellant prior to resentencing and abandoned Appellant in order to rehabilitate Dr. Samuel as opposed to advocating for Appellant.  Appellant's Brief at 11-30.  After review, we conclude that the

PCRA court thoroughly addressed these claims of error, and we affirm on the basis of that opinion.[4]  PCRA Court Opinion, 9/5/17.[5]

We expound on the PCRA court's opinion only to underscore that Appellant has not established prejudice.  The original sentence was imposed when the trial court believed that there were mitigating factors including PTSD.  After the Commonwealth's motion for reconsideration was granted, the trial court admitted new evidence uncovering Appellant's dishonesty, and these documents vitiated the earlier mitigation and leniency.  ***See Vignola***, 53 A.3d 937, 921 EDA 2011 (unpublished memorandum at 11) ("The leniency in question was based solely on the evidence regarding hazing and PTSD, which was the evidence refuted by the Commonwealth.").  As discussed above, this Court concluded that the documents were admissible and were the sole basis upon which Appellant was resentenced.  There is nothing in Appellant's brief that establishes there was any evidence, argument, or advocacy that could have altered the trial court's decision once it was revealed that Appellant and his mother had lied about his PTSD.  Accordingly, Appellant cannot establish prejudice, and therefore, his claim fails.  ***Johnson***, 179 A.3d at 1114.

---

[4] We are cognizant that the sentencing judge, the Honorable Renee Cardwell Hughes, retired from the bench and that the PCRA court opinion was drafted by the Honorable J. Scott O'Keefe.

[5] The parties are directed to attach a copy of the PCRA court's opinion in the event of future proceedings.

For the reasons set forth above, we conclude that no relief is due.

Accordingly, we affirm the order denying Appellant's PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/15/18

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA     :     CRIMINAL TRIAL DIVISION

    :

v.     :     1832 EDA 2017

    :

JOSEPH VIGNOLA     :     CP-51-CR-0012131-2008

CP-51-CR-0012131-2008 Comm v Vignola Joseph C
Opinion

7998050711

**OPINION**

O'KEEFE, J.

Defendant, Joseph Vignola, appeals from the order denying his Post-Conviction Relief Act

Petition (hereinafter referred to as "PCRA" for the sake of brevity) pursuant to 42 Pa.C.S. § 9541

*et seq.*

## PROCEDURAL HISTORY

The defendant was arrested on May 31, 2008, and charged with attempted murder of Ms.

India Brown and related offenses. Vignola was held for court on all charges after a preliminary

hearing on September 24, 2008. A motion to suppress the defendant's statement was heard and

denied on May 25, 2010. Four months later, the defendant entered into an open plea to the charges

of aggravated assault, unlawful restraint and possessing the instruments of a crime. A lengthy

sentencing hearing was held on November 3, 2010, at the conclusion of which Mr. Vignola was

sentenced to an aggregate sentence of two to four years' incarceration, followed by ten years of

1

probation. The Commonwealth filed a motion for reconsideration of sentence on November 12, 2010, which the trial court granted. Hearings were held on March 2nd and March 8th, 2011, resulting in the defendant being sentenced to an aggregate incarceration of nine to twenty-six years.

Timely appeal was taken to the Superior Court, who affirmed on June 22, 2012. The petition for allowance of appeal to the Supreme Court was denied on April 10, 2013.

A counseled PCRA petition was filed on April 3, 2014. The undersigned was assigned the matter on February 11, 2016, and evidentiary hearings were held February 22nd, 23rd, 27th, and 28th. The petition was dismissed on April 27th and a notice of appeal filed with the Superior Court on May 17, 2017, the subject of this opinion.

## STANDARD OF REVIEW:

When reviewing an order denying a PCRA petition, an appellate court looks to whether the PCRA court's decision is supported by the evidence of record and is free of legal error. *Commonwealth v Spotz*, 624 Pa. 4, 84 A.3d 294 (2014). On questions of law, the standard of review is *de novo* and the scope of review is plenary. *Commonwealth v Henkel*, 90 A.3d 16, 20 (Pa.Super. 2014). The appellate court will grant great deference to the factual findings of the PCRA court and will not disturb those facts unless they have no support in the record. *Commonwealth v Rykard*, 55 A.3d 1177, 1183 (Pa.Super 2012)

## FACTS

The defendant was enrolled as an Emergency Medical Technician student at Jefferson University Hospital in May of 2008. After class one day, Vignola asked an instructor to explain how

2

to slice someone's throat. A few days later, the defendant went onto Craig's List's 'erotic services' on the internet and found the phone number of a young prostitute. Vignola arranged to meet Ms. India Brown at a motel on City Avenue in Philadelphia. Following sex an argument ensued and the defendant punched the young woman in the throat, knocking her to the floor. Vignola sat on the girl's chest until she was no longer breathing. Feeling no pulse, Vignola pulled out a knife and slit the woman's throat, got dressed, stole the money he had paid her and left the motel, leaving the young woman for dead. (N.T. 9-20-10, pp. 12-13, 17). Motel employees found the unconscious girl and called police rescue. Ms. Brown was rushed into surgery at Jefferson Hospital where, miraculously, the doctors were able to repair her wounds and save her life. (N.T. 9-20-10, pp. 13-17).

Police detectives interviewed the defendant the next day wherein he claimed that Brown had been attacked by a twenty year old bald black male with facial hair, approximately two hundred and forty pounds. (N.T. 9-20-10, pp. 17-23, 28-29). Vignola submitted to a polygraph test the following day, which he failed. This defendant then gave another statement to the detectives, again describing the same black male, but in this version, contended that he was in the room but ordered by the black male to hold the victim on the ground while that man slit Brown's throat. Vignola further claimed that after the black male left the room he checked the victim's pulse and finding none, left the motel. (N.T. 9-20-10, pp. 12-14). Following the second statement, the defendant's parents arrived at the police station. After being allowed to consult with his parents, Vignola gave a third statement confessing that he was the sole perpetrator of the attack on the young girl. The defendant admitted that he discarded the knife a short distance away from the motel. Police recovered the used condom from the motel room, which matched the defendant's

3

DNA.

A motion to suppress was heard and denied by the trial court and four months later the defendant entered an open plea to the charges of aggravated assault, unlawful restraint and possession of the instruments of a crime.

The original sentencing hearing was held on November 3, 2010. The court had reviewed the pre-sentence investigation report, a mental health evaluation and sentencing memoranda from both sides. Ms. Brown provided victim impact and the parties stipulated to testimony that less than ten hours before the attack, the defendant had questioned his paramedic instructor concerning breaking and cutting someone's neck. (N.T. 11-3-2010, pp. 6-9, 22-23). The Commonwealth asked for a sentence of twelve to twenty-four years because of the heinousness of the crime; the fact that the defendant planned the crime, including asking his paramedic instructor how to inflict the wounds he exacted; that he left the young woman on the motel floor to die; and his repeatedly lying to the police. The defense presented the testimony of a licensed clinical psychologist, Dr. Steven Samuel, who diagnosed Vignola as having an adjustment disorder with symptoms of post-traumatic disorder, which was attributed to atrocious events allegedly suffered while attending Valley Forge Military Academy. (N.T. 11-3-2010, pp. 65-66, 143-145). According to Dr Samuel, the defendant had told him that while at school he had been physically and psychologically abused. Dr. Samuel recounted the events at school that he believed to be the root of Vignola's Post-traumatic Stress Disorder (hereinafter referred to as "PTSD") and mental illness: The defendant told the doctor that cadets threw him down a flight of stairs and broke his ankle which needed a cast; that upon his return to school the defendant claims that other students put Vaseline on the stairway railing preventing the defendant from ascending or descending the stairway; that they urinated on

4

his person and belongings; and that he was beaten so badly that there he needed to go to the infirmary several times due to having blood in his urine and several other incidents. The one event that the defendant relayed to Dr. Samuel that was sufficient to be the cause of his PTSD was when the cadets threw him out of a third story window. (N.T. 11-3-2010, pp. 55-96, 123-126; Dr. Samuel's report, pp. 6-7). The doctor opined that this was the only event that was traumatic enough to the defendant to cause his PTSD. Dr. Samuel ran a battery of tests and came to the diagnoses that Vignola suffered from ADHD and adjustment disorder, and displayed symptoms of PTSD. The doctor stated that although Vignola did not meet the current diagnosis of PTSD, he had the symptoms as of the date of the testing, and that he believed Vignola had PTSD at the time the slashing of the young woman's throat, and that he still had residual symptoms of the disorder. (N.T. 11-3-2010, pp. 65-69, 70-77, 106-108). Accordingly, Dr. Samuel opined that the defendant should not be imprisoned, but sent to a mental health program, preferably at Gaudenzia House.

The defendant's mother testified as to the trauma her son endured as a result of the events at Valley Forge, although the tales were quite different than what the defendant told Dr. Samuel. (N.T. 11-3-2010, pp. 55-96). Lastly, at the sentencing hearing, the defendant read a prepared statement, but was not subjected to questioning by either the prosecutor or the sentencing judge.

The trial court credited the defendant's contention that he suffered from PTSD, reiterated that the sentencing guidelines were fifty-four to seventy-two months and that the guidelines were appropriate. However, the judge sentenced Mr. Vignola to twenty-four to forty-eight months incarceration followed by ten years' probation. (N.T. 11-3-2010, pp 154-158).

The Commonwealth filed a motion for reconsideration on November 12, 2010, which was

5

granted and a hearing was scheduled for March 2, 2011. Counsel stipulated to the authenticity of several documents, including the defendant's medical records from Bryn Mawr Hospital and Valley Forge Military Academy as well as copies of the email communications between the defendant's parents and the school. (N.T. 3-2-2011, pp. 2-4). The prosecution argued that those documents unequivocally proved that the defendant and his mother had lied to both the court and Dr. Samuel; that Vignola had not been thrown out of a third-story window, had not been put in a cast, nor had he suffered the other allegedly traumatizing events at Valley Forge Military Academy he had claimed. As such, the Commonwealth argued, the diagnosis that at the time Vignola slit Brown's throat he suffered from PTSD and that he still had symptoms of that disorder was baseless, *ergo* the court's reason for imposing a mitigated sentence was negated.

Defense counsel asked to again present the testimony of Dr. Samuel but the court continued the matter to review the documents presented by the prosecution, remarking that she had given the defendant four to eight years thinking he suffered from PTSD. (N.T. 3-2-2011, pp. 11, 30-31). The matter resumed on March 8, 2011. At that time, the prosecutor asked to admit the documents, to which defense counsel objected, moving to strike them from the record. The objection was overruled, the motion denied. (N.T. 3-8-2011, pp. 3-5). The court disclosed that she had read all of the previously submitted documents and provided the parties copies of a report from the Department of Corrections, including the results of psychological testing of the defendant.

Dr. Samuel again testified for the defense, admitting that the psychological findings by the Department of Corrections did not substantiate a finding of PTSD. Dr. Samuel further conceded that Vignola did not suffer from PTSD and that his prior conclusion was as a result of the information provided to him by the defendant and his family. The doctor did however testify that he

6

had visited Vignola while incarcerated as well as reviewed his prison medical records and described for the court the lack of any counselling or treatment, a lack of any consistent medication and essentially that the prison setting the defendant was being subjected to was not rehabilitation in any sense. (N.T. 3-08-2011, pp. 8-13). Additionally, letters from Ms. Caroline Dupont and her son, Justin Maverick Kerakov, were submitted concerning abuse the son had suffered at Valley Forge Military Academy. Although specifically given the opportunity to address the court, Mr. Vignola elected not to say anything.

The judge vacated the sentences, noted that the guidelines called for a sentence of six to twelve years' incarceration, and addressed the defendant's presentation of false and misleading information to the court as well as to Dr. Samuel, the particular viciousness of the crime, the callousness of leaving the young woman with her throat slashed to die as well as the defendant's need for rehabilitation. (N.T. 3-8-2011, pp. 29-32). Accordingly, the court imposed a sentence of four to sixteen years' incarceration on the charge of aggravated assault, two and one-half to five years' incarceration for possessing the instrument of a crime and two and one-half to five years for unlawful restraint, all consecutive to one another for an aggregate sentence of nine to twenty-six years of incarceration.

## LEGAL DISCUSSION:

### *Ineffective Assistance of Counsel*

All of defendant's complaints involve the reconsideration of sentence and counsel's action or inaction in response thereto. The law is clear that counsel is presumed effective and a defendant claiming ineffective assistance of counsel bears the burden of proving otherwise. *Commonwealth*

7

*v Fears*, 624 Pa. 446, 86 A.3d 795 (2014); *Commonwealth v Cross*, 535 Pa. 38, 634 A.2d 173 (1993). In order to overcome this presumption, a defendant must meet a three component standard: First, the underlying claim must have arguable merit. *Commonwealth v Rollins*, 558 Pa. 532, 542, 738 A.2d 435, 441 (1999); *Commonwealth v Travaglia*, 541 Pa. 108, 661 A.2d 352, 356 (1995). Second, no reasonable basis must exist for counsel's actions or failure to act. In making this determination, the appellate court does not question whether there was a more logical course of action which counsel could have pursued, but rather did counsel's decision have any reasonable basis. *Commonwealth v Rollins, supra,* 558 Pa. at 542, 738 A.2d at 441. Lastly, the defendant must establish that the he suffered prejudice because of counsel's error, such that there is a reasonable probability that the outcome of the proceeding would have been different absent such an error. *Commonwealth v. Fears, supra* 642 Pa. at 461, 86 A.3d at 804; *Commonwealth v Lesko*, 609 Pa. 128, 15 A.3d 345, 373-74 (2011) (citing *Commonwealth v Pierce*, 515 Pa. 153, 527 A.2d 973, 975 (1987)). It is not enough for the defendant to claim that counsel could have taken different steps, but rather, he must prove that counsel's strategy was "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v Dunbar*, 503 Pa. 590, 470 A.2d 74, 77 (1983); *Commonwealth v. Albrecht*, 510 Pa. 603, 511 A.2d 764, 775 (1986).

### *Failure to Consult with Client*

Vignola contends that sentencing counsel was ineffective for failing to meet with him prior to either the March 2nd or March 8th resentencing hearings. There is no claim that counsel failed to adequately consult with his client prior to the first sentencing, nor any complaint about counsel filing an appeal after the resentencing. The law is clear that the amount of time an attorney spends with his client before a hearing is not, by itself, a legitimate basis for inferring counsel's ineffective

8

assistance. *Commonwealth v Harvey*, 571 Pa. 533, 812 A.2d 1190, 1196-97 (2002). In order to establish ineffective assistance resulting from the failure of an attorney to consult with his client, the defendant must establish that counsel inexcusably failed to raise issues that, had they been raised would have entitled the defendant to relief. *Commonwealth v Porter*, 556 Pa. 301, 728 A.2d 890, 896 (1999). The defendant has failed to demonstrate that counsel failed to raise any issue that would have entitled the defendant to relief. In the case *sub judice*, counsel was asked why he didn't discuss with his client the difference between the hospital and school records and the tale he had told the psychologist, to which counsel responded:

> "I had a reason for not doing that with Joe Junior. And the simple reason is, that I was afraid the Joe Junior would say I'll testify.
>
> Now, that would have been a disaster. For us because Judge Hughes had handled the suppression and throughout the suppression, it was quite obvious to her that Joe Junior did not tell the truth, that he blatantly lied to any number of people. He lied to his father or else his father wouldn't have taken him in to give a statement to police.
>
> He lied to police. He blamed the crime on a large baldheaded black man, which had infuriated Judge Hughes. And he basically lied in his statement to police as to a number of things, including what went on in the motel room with the young lady.
>
> And Judge Hughes knew him to be someone who would lie, especially when he thought it was in his own interests and to have him go on the stand would have, I think, put her through the ceiling.
>
> Q. And you explained all that to Mr. Vignola?
>
> A. No, I didn't.
>
> Q. You made the judgment that that's what was in his best interests?
>
> A. I did.
>
> (N.T. 2-22-2017, pp. 39-40).

9

The law is clear, that a defendant's claim of ineffectiveness cannot be, with the benefit of hindsight, that counsel should have taken a different approach. Instead, the defendant must prove that counsel's strategy was "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v Dunbar*, 503 Pa. 590, 470 A.2d 74, 77 (1983), *Commonwealth v Albrecht*, 510 Pa. 603, 511 A.2d 764, 775 (1986). In order to show the required prejudice, the defendant must prove that, but for counsel's arguably ineffective act, there is a reasonable probability that the result of the proceedings would have been different. *Commonwealth v Neal*, 713 A.2d 657, 662 (Pa.Super. 1998). Trial counsel had consulted with his client as well as his parents several times prior to the original sentencing. Vignola's complaint that counsel did not meet with him between the time of the original sentence and the resentencing alleges no prejudice. Nor does the defendant adequately explain what should have been presented that would have resulted in a different result. During the PCRA hearings, the defendant presented the testimony of Mr. Theodore Daniels, which was of no aid to the petitioner Mr. Daniel's credibility was sorely lacking and his personnel file depicting his inappropriate conduct with cadets was somewhat disturbing. The defendant also testified during these hearings, he was present during the resentencing hearings, and neither he nor his family asked for copies of any of the documents presented at those hearings. Furthermore, Vignola admitted that he was given the opportunity to speak at the re-sentencing but that he refused. (N.T. 2-27-2017, pp. 30-31). Vignola further admitted that throughout the proceedings, he had consulted with his father, a lawyer as well as his trial lawyer; that between March 2nd and March 8th he had met with his father; that although his father had been in contact with trial counsel through the course of the proceedings, that he doesn't recall telling his father that they needed to contact the lawyer to present evidence contrary to the reports being presented by the

10

Commonwealth. (N.T. 2-27-2017, pp. 144-160). This court specifically found the testimony of the defendant to be less than credible.

Assuming *arguendo* that counsel was deficient in failing to consult with his client between the original sentence and the resentencing, Vignola has shown no prejudice as a result of that failure. *See Commonwealth v Green*, 2017 Pa.Super. 243, --A.3d-- (2017); *Commonwealth v. Touw*, 781 A.2d 1250 (Pa.Super. 2001); *Roe v Flores-Ortega*, 528 U S. 470, 120 S.Ct. 1029, 145 L Ed.2d 985 (2000). There was no credible evidence that counsel failed to produce. There was no credible documentation neglected by the attorney. Clearly, the defendant had lied to the police and Dr. Samuel, and his credibility when testifying before this court is extremely suspect. The defendant suffered no prejudice as a result of any perceived lack of consultation with his counsel and as such this claim also fails.

### *Abandonment of Client*

Vignola's main ineffective assistance claim against his sentencing counsel is that his attorney 'abandoned' him in order to protect the reputation of the psychologist engaged by the attorney. (Statement of Matters Complained of on Appeal, p.1). The defendant bases this accusation in that his sentencing attorney had no contact with him during the time between the original sentence on November 3, 2010 and the final sentence, imposed on March 8, 2011. Defense counsel had been retained since at least October 10, 2009. (N.T. 2-22-2017, pp. 7-8). On February 28, 2011, defense counsel received a considerable amount of documentation from the prosecution, including the defendant's records from Valley Forge Military Academy, from Bryn Mawr Hospital and emails from both the defendant's mother and father to be presented at the initial reconsideration hearing.

11

(N.T. 2-22-2017, pp. 20-24, 28). Although sentencing counsel stipulated to the authenticity of those records, he objected to their admission and asked they be stricken from the record The objection was overruled. (N.T. 2-22-2017, pp. 24-27).

Sentencing counsel testified at the first PCRA hearing and the following exchange occurred·

> "Q. Why did you bring him back for the sentencing on the 2nd of March? Him, being Dr. Samuels?
> A. Because he was able to say that given the medical records, various assertions that he made in his report were no longer valid and he was able to say that aside from some anxiety, which Joe Junior suffered from, there was no medication.
> Q. So you brought him back, you brought Dr. Samuels back to show no mitigation?
> A. I brought him back to clarify the record. I brought him back, so he could save what was left of his reputation.
> Q. His reputation, Dr. Samuels?
> A. Yes." (N.T. 2-22-2017, p. 33).

The defendant contends that counsel abandoned his client by failing to authenticate the documents sent by Valley Forge and Bryn Mawr Hospital as well as not reviewing them with his client. Counsel explained that it did not make any sense to review them with his client in that he already had a record of what the defendant had said in the reports from Dr. Samuel. (N.T. 2-22-2017, pp. 30-31). Counsel further stated that he had been skeptical of the defendant's claims when he received the original report from Dr. Samuel, prior to the original sentencing. (N.T. 2-22-2017, pp. 30-32). In spite of that, trial counsel again presented the testimony of Dr. Samuel at the reconsideration hearing, who testified that Vignola was receiving no treatment although he seriously needed therapy for a variety of psychiatric problems that were documented long before court, that the defendant's behavior in prison had been without infraction and that the defendant was a bright

12

person with a high IQ and that as such much more receptive to treatment and rehabilitation. (N.T. 3-08-2011, pp. 13-16).

Counsel did not abandon his client. An attorney has a duty to undertake reasonable investigations or to make decisions that render particular investigations unnecessary. *Commonwealth v Johnson*, 600 Pa. 329, 966 A.2d 523 (2009); *Commonwealth v Basemore*, 560 Pa. 258, 744 A.2d 717 (2000). Trial counsel continued with an investigation, although unsuccessful, to obtain the testimony of others, specifically Megan Mann, the defendant's girlfriend at the time, and Adam Lord, a prior roommate. (N.T. 2-23-2017, pp. 143-155). Counsel's investigator located Ms. Mann's father. The result was that Vignola had never told Megan, or her family, about being thrown out of a third story window or any of the other alleged abuses, that none of the Manns would be willing to testify on the defendant's behalf and if called to the stand their testimony would be extremely harmful to the defendant. (N.T. 2-23-2017, pp. 148-153). Counsel's actions in hiring an investigator to seek other witnesses, consulting with the investigator as to the witnesses' statements, consulting and bringing in the testimony of Dr. Samuel in mitigation all show decisively that counsel did not abandon his client. Accordingly this claim is without merit.

### *Failure to Object To Reconsideration*

The defendant further complains that counsel was ineffective in failing to object to the reconsideration as the prosecutor did not specify any new reasons for resentencing. This issue was already addressed by the Superior Court on direct appeal.

> "The purpose of Pa.R.Crim.P. 720 is to give the trial court the first opportunity to modify sentence and to give the appellate court the benefit of the court's views. *Commonwealth v. Anderson*, 450 A.2d 1011 (Pa. Super. 1982); *Commonwealth v Broadie*, 489 A.2d 218,

13

### *Failure to Object to Documentation*

Vignola complains that sentencing counsel was ineffective in failing to object to the intro-duction of documentation that counsel had received the day before the hearing which the defense attorney had not reviewed with his client. On March 2, 2011, the Commonwealth presented vari-ous records including those from Valley Forge Military Academy and Bryn Mawr Hospital. (N.T. 3-02-2011, pp. 2-3). Counsel stipulated to the authenticity of the records only, not to their admis-sion. (N.T. 3-02-2011, pp. 2-3). On March 8, 2011, the prosecution moved into evidence that documentation and counsel objected, moving to strike the evidence on the basis that since the motion to reconsider did not specifically challenge the accuracy of the diagnosis or testimony con-cerning the defendant's time at the school, that the evidence was outside the confines of the pleading. (N.T. 3-8-2011, pp. 4-5). The objection was overruled and the motion to strike denied. As such, defendant's claim that counsel was ineffective in failing to object to the admission of the exhibits is without merit.

### *Failure to Correct Judge as to her Belief Defendant Suffered from PTSD*

Vignola further complains that counsel was ineffective in failing to correct the court as to her belief that the defendant suffered from PTSD. The testimony of Dr. Samuel at the first sen-tencing hearing was crystal clear. He diagnosed the defendant as suffering from ADHD and ad-justment disorder, and displaying symptoms of PTSD. The doctor stated that although Vignola did not meet the current diagnosis of that (PTSD), he had the symptoms as of the date of the testing, and that he believed Vignola had PTSD at the time the event occurred and that he still had residual symptoms of the disorder. (N.T. 11-3-2010, pp. 65-69, 70-77, 106-108). The court accepted this

15

diagnosis. For the defendant to now claim that trial counsel was ineffective in not correcting the court, for accepting the diagnosis his expert had presented defies all logic. In order to succeed on an ineffective assistance claim, one of the elements the defendant must establish is that no reasonable basis existed for counsel's actions or inaction. *Commonwealth v. Fears*, 624 Pa. 446, 86 A.3d 795 (2014); *Commonwealth v Lesko*, 609 Pa. 128, 15 A.3d 345 (2011); *Commonwealth v Pierce*, 515 Pa. 153, 527 A.2d 973 (1978). Vignola's argument fails completely as to this aspect. Trial counsel presented an expert psychologist who diagnosed the defendant, based upon what the defendant had told him. To now claim that counsel was ineffective in getting the court to adopt his expert's opinion is meritless.

### *Failure to Object to Initial Re-Sentencing Hearing*

Lastly the defendant claims counsel was ineffective in failing to object to the initial resentencing hearing in that he had not met with his client or reviewed any of the records with his client. This issue has been more than adequately addressed in previous sections of this opinion, which demonstrate that this claim is also without merit.

Accordingly, the court acted within its discretion in dismissing the PCRA petition and should be affirmed.

BY THE COURT:

DATE: <u>September 5, 2017</u>

J. SCOTT O'KEEFE, J.

16