J-S52018-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAWUD ABDUL-HAKIM | : | |
| | : | |
| Appellant | : | No. 363 EDA 2020 |

Appeal from the PCRA Order Entered January 21, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008191-2011

BEFORE:   PANELLA, P.J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:                         **FILED:  APRIL 12, 2021**

Dawud Abdul-Hakim (Appellant) appeals from the order entered in the
Philadelphia County Court of Common Pleas, denying his first, timely Post
Conviction Relief Act[1] (PCRA) petition.  Appellant was convicted of second-
degree murder[2] and related offenses following a joint jury trial with a co-
defendant.  He avers the PCRA court erred in denying his claims that:  (1) trial
counsel was ineffective for violating the dictates of **Bruton v. United States**,
391 U.S. 123 (1968); (2) direct appeal counsel was ineffective for not
challenging the trial court's denial of Appellant's motion to sever on the basis

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] 18 Pa.C.S. § 2502(b).

of **Bruton** violations; and (3) trial counsel was ineffective for not objecting to particular testimony by a police officer. We affirm on the basis of the PCRA court's opinion.

On Appellant's direct appeal, this Court summarized the underlying facts:

> On October 20, 2010, Appellant[ ] and an unidentified male were invited by co-defendant, Kevin Williams . . . to smoke weed in [Williams'] car. At approximately 11:20 PM, Williams was driving west on Jackson Street in . . . Philadelphia when Appellant suggested they [r]ob three (3) men they saw walking[:Jason Moncrief, Andrew Lillie, and Decedent, Anthony DeMarco Jr. Appellant knew Decedent "since he was 12 years old from playing basketball with [him] in the neighborhood."] Appellant had a .40 caliber Glock pistol on his person. The unidentified male told Williams to stop the car, said he would be right back, and instructed Williams to stay there. Appellant and the unidentified male exited Williams' car on to the sidewalk ahead of [the three victims] and walked slowly so [the victims] could catch up. Williams backed his car onto nearby Philip Street where he could see [all of the men]. Williams kept his car running in the middle of Philip Street and turned off his headlights.
>
> As the two (2) groups converged, the unidentified male grabbed Moncrief and Appellant grabbed [Decedent,] holding [him] at gunpoint. The unidentified male and Appellant directed [the three victims] to give up their money, whereupon the unidentified male went into the pockets of Moncrief and retrieved $50. Appellant again told [Decedent] to "Give it up". [Decedent] refused to comply, and was hit in the back of the neck with the gun by Appellant. [Decedent] then began to fight Appellant, punching him repeatedly and wrestling Appellant to the ground. During the fight Appellant dropped the gun. The unidentified male picked up the gun, told [Decedent] to get off of Appellant, then fired six (6) shots at [Decedent], hitting him four (4) times and hitting Appellant once (1) in the left hip. Lillie and Moncrief subsequently ran south on Second Street, Williams drove west on Jackson Street, while Appellant and the unidentified male ran west on Jackson Street.

- 2 -

[Decedent] was transported to [the h]ospital, where he was pronounced dead. . . .

***Commonwealth v. Abdul-Hakim***, 1485 EDA 2014 (unpub. memo. at 1-3, 7-8) (Pa. Super. Nov. 6, 2015) (citation omitted), *appeal denied*, 652 EAL 2015 (Pa. Mar. 29, 2016).

Appellant and Williams were arrested. Both men gave incriminating statements to the police, which, as we discuss ***infra***, were introduced at trial. Appellant was charged with homicide, conspiracy, robbery,[3] and related offenses. The Commonwealth filed a motion to try Appellant and Williams together. Williams then filed a motion to sever their cases, which he and Appellant jointly litigated. The trial court denied this severance motion.

Appellant's and Williams' cases proceeded to a first joint jury trial in October of 2012. The jury was hung on several charges and thus a mistrial was declared.

A second jury trial commenced on November 20, 2013. The two surviving victims, Moncrief and Lillie, testified as Commonwealth witnesses. The Commonwealth also presented the signed, written statement that Williams gave to Philadelphia Homicide Detective Levi Morton, by way of Detective Morton reading the statement aloud to the jury. N.T. Jury Trial, 11/22/13, at 73. In that statement, Williams admitted the following: on the

---

[3] 18 Pa.C.S. §§ 903(a), 3701(a)(1)(i).

- 3 -

night of the incident, he was driving, saw two men, and asked them to "smoke some weed with" him. *Id.* at 77-78. They agreed, and "[o]ne got in the front seat, and the other boy got in the back seat." *Id.* at 78. "[T]he boy in the back seat" said he "was going to rob somebody tonight." *Id.* at 79. "The guy in the front seat spotted three white males coming down Second Street. The boy in the back seat said, let's get them right there." *Id.* at 80. "[T]he guy in the front . . . told [Williams] to stop and let him out right there[.]" *Id.* "They [both] got out of the car[ and Williams] saw the guy that was in the back seat . . . holding something in his right hand down by his right leg." *Id.* "The guy that was in the back seat raised his hand to one of the white males, and then they started tussling[ and] fell to the ground." *Id.* at 81. "The other one had the other white guy[ and] went over to help this boy that was on the ground tussling. He grabbed the gun from his boy [sic], and then [Williams] saw him shoot the white boy." *Id.* at 81-82. Throughout this statement, neither Appellant nor the unidentified male were identified by name or as Williams' "co-defendant." *See id.* at 78-83.

The Commonwealth likewise presented the signed, written statement that Appellant gave to Philadelphia Homicide Detective John Harkins. Detective Harkins read aloud the statement, in which Appellant told police the following: Appellant "and two other guys were out just driving around[ and] smoking in the car," and Appellant had a Glock 40 gun. N.T., 11/22/13, at 164-65. They "saw three guys walking up Second Street[ and] figured we

could rob them." *Id.* at 164. "[T]he driver of the car pulled over, and me and the other guy walked up the block[.]" *Id.* As the three victims walked past Appellant, Appellant "grabbed" Decedent and put his gun to Decedent's "chest and said, just give it up." *Id.* at 166. Decedent "started tussling with [Appellant] trying to get the gun." *Id.* The gun fell out of Appellant's hand, and "the guy that was with [Appellant] picked up the gun and started yelling, get up, get off him[,] talking to [Decedent]. Then he just started shooting." *Id.* at 166-67. Throughout Appellant's statement, Williams' name was not stated, and instead he was referred to as "the driver." *See id.* at 164. The name of the unidentified male was likewise not stated, and he was referred to as "the other guy" and "the guy who was with me." *Id.* at 164-68.

On cross-examination, Appellant's trial counsel asked Detective Harkins if he conducted interviews "with any other eyewitnesses[.]" N.T., 11/22/13, at 182. The detective replied "[t]here were no other interviews of eyewitnesses to the entire incident. However, there were other interviews of witnesses that saw parts of either the incident or flight or beyond flight." *Id.* Appellant's counsel then asked:

> . . . You had the interview of the individual who parked his car up the street?
>
> [Detective Harkins:] Yes.
>
> Q. Now how about anybody else?
>
>     *  *  *
>
> A. There were a number of interviews that were conducted.

- 5 -

*Id.*

Following the reading of Appellant's statement to the detective, the trial

court instructed the jury as follows:

> . . . I just want to give you a cautionary instruction. You've just heard the detective read a statement that is attributed to one of the defendants in this matter. That statement, the content of the statement, may only be used against the person who made the statement.

N.T., 11/22/13, at 172. Furthermore, in the final jury charge given prior to

the jury's deliberation, the trial court further instructed as follows:

> You have also heard evidence that each defendant made a statement to the police. I instruct you that the contents of each statement can only be used against the maker of the statement. So the statement attributed to Defendant Williams can only be used against him, and the statement attributed to [Appellant] can only be used against him.

N.T., 11/25/13, at 55.

Pertinent to this appeal, we note the following trial testimony by

Philadelphia Police Sergeant John Venit. He watched a video taken by a

private residence security camera, which showed Williams' car, at the time of

the shooting, one block away from the scene of the crime. *See* N.T. Jury Trial,

11/20/13, at 103-04.at 106, 108. Sergeant Venit testified:

> From that video and from my personal experience with this vehicle, it was an older model Buick with the . . . far left brake light . . .missing, had been stopped previously, documented on 75-48, which is our form for vehicle investigations, and previously before the homicide. And this vehicle is well known to police in the area.

*Id.* at 108. Trial counsel did not object to this testimony. *See id.* at 109.

- 6 -

In connection with Sergeant Venit's testimony, we note Police Officer Craig Martella testified that on October 15, 2010 — five days before the underlying shooting — he conducted a traffic stop of Williams' vehicle for an inoperable left rear brake light. N.T., 11/22/13, at 44-45. Officer Martella stated Williams was the driver, but in his brief testimony, the officer made no mention of any other passengers or Appellant. *See id.* at 42-48.

Neither Appellant nor Williams testified on their own behalf. N.T. Jury Trial, 11/25/13, at 5, 9. Appellant presented two defense exhibits, and Williams called his father as a character witness. *Id.* at 11-12.

On November 26, 2013, the jury found Appellant guilty of second-degree murder, conspiracy to commit murder, three counts of robbery, possessing an instrument of crime, and persons not carry a firearm without a license.[4] On the same day, the trial court imposed a life-without-parole sentence, as well as concurrent, mandatory minimum sentences on each robbery count.

_____

[4] 18 Pa.C.S. §§ 907(a), 6106(a)(1). Williams was found guilty of third-degree murder, conspiracy, and three counts of robbery for his role "as the driver in [the] armed street robbery of three victims." *Commonwealth v. Williams*, 355 EDA 2018 (unpub. memo. at 1) (Pa. Super. Oct. 15, 2018). Williams received an aggregate sentence of 35 to 70 years' imprisonment. *Id.* at 2. This Court affirmed his judgment of sentence the same day we affirmed Appellant's judgment of sentence, November 6, 2015. *See id.*

On direct appeal to this Court, Appellant challenged the weight of the evidence identifying him as one of the perpetrators, as well as the legality of the sentence. On November 6, 2015, this Court affirmed his convictions, but agreed the three robbery counts merged with second-degree murder for sentencing purposes, and were violative of *Alleyne*.[5] *Abdul-Hakim*, 1485 EDA 2014 (unpub. memo. at 11). This Court thus vacated the three robbery sentences, but did not remand, as Appellant's overall sentence of life without parole was not disrupted. *Id.* at 13. On March 29, 2016, the Pennsylvania Supreme Court denied allowance of appeal. *Abdul-Hakim*, 652 EAL 2015.

Appellant filed a *pro se* timely, first PCRA petition on October 13, 2016. Following the appointments of several attorneys, present counsel, Stephen O'Hanlon, Esquire, entered his appearance. He filed an amended PCRA petition on July 8, 2019, arguing "[t]rial counsel was ineffective for repeatedly violating the dictates of *Bruton*" by cross-examining Detective Harkins in such a manner that "elicited a response . . . that there were statements from other witnesses."[6] Appellant's Amended PCRA Petition & Memorandum of Law

_____

[5] *Alleyne v. United States*, 570 U.S. 99 (2013).

[6] We note Williams also filed a timely first PCRA petition, raising, *inter alia*, a similar claim that his trial counsel was ineffective for failing to object to a *Bruton* violation. *Williams*, 355 EDA 2018 (unpub. memo. at 2-3). The PCRA court denied relief, and on appeal, this Court affirmed, concluding Appellant's "statement was properly redacted, comported with precedent, and was fittingly admitted with cautionary instructions to the jury." *Id.* at 3 (citation omitted).

Requesting New Trial, 7/8/19, at 4, 9. Appellant reasoned "[t]he jury could only conclude" these witness statements included the statement by Williams. *Id.* at 9. Appellant further averred prior appellate counsel was ineffective for not challenging, on direct appeal, the denial of his motion to sever, where the ***Bruton*** violations caused him prejudice. *Id.* at 10-11. Finally, Appellant asserted trial counsel was ineffective for failing to object to Sergeant Venit's testimony that Williams' vehicle "was well-known to police." *Id.* at 15.

The PCRA court ultimately issued Pa.R.Crim.P. 907 notice of intent to dismiss Appellant's petition without a hearing, and issued the underlying dismissal order on January 21, 2020. Appellant took this timely appeal and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of issues complained of on appeal.

Appellant presents three issues for our review:

1. Did the PCRA court err in dismissing Appellant's PCRA Petition without a hearing because trial counsel was ineffective for repeatedly violating the dictates of ***Bruton*** . . ., thereby depriving Appellant of his Sixth Amendment rights to confrontation and his right to a fair trial?

2. Did the PCRA court err in dismissing Appellant's PCRA Petition without a hearing because direct appeal counsel was ineffective for failing to raise the denial of the Motion to Sever because redaction could not cure the fact that the jury could only conclude that both defendant statements referred to each defendant?

3. Did the PCRA court err in dismissing Appellant's PCRA Petition without a hearing because trial counsel was ineffective for not objecting and seeking a curative instruction or a mistrial when Sergeant John Venit testified that the vehicle in which Appellant had previously been stopped was well-known to police thereby

undermining the presumption of innocence and Appellant's right to a fair trial?

Appellant's Brief at 4.

Appellant first avers the PCRA court denied his "petition without a hearing because trial counsel was ineffective for repeatedly violating" ***Bruton***. Appellant's Brief at 8 (capitalization removed). After citing relevant authority concerning ***Bruton*** and severance of co-defendants' trials, Appellant focuses on his trial counsel's cross-examination of Detective Harkins. ***Id.*** at 15. Appellant avers trial counsel "elicited a response from Detective Harkins that there were statements from other witnesses that saw Appellant's alleged flight and that other interviews were conducted," and "[t]he jury could only conclude that this included [Williams' statement] and this, in turn, violated the ***Bruton*** Order and associated redaction." ***Id.*** at 15. Appellant claims "prejudice because the jury could only determine that co[-]defendant Williams referenced" him. ***Id.*** at 15-16.

We note the relevant standard of review: "[W]e examine whether the PCRA court's determination 'is supported by the record and free of legal error.'" ***Commonwealth v. Mitchell***, 141 A.3d 1277, 1283–84 (Pa. 2016) (citation omitted). Furthermore, "a PCRA petitioner is not automatically entitled to an evidentiary hearing." ***Commonwealth v. Miller***, 102 A.3d 988, 992 (Pa. Super. 2014). Rather,

> It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of

- 10 -

the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Id.* (citation omitted).

In **Bruton**, the High Court held "the admission of [a] facially incriminating statement by [a] non-testifying co-defendant violate[s a defendant's] right of cross-examination guaranteed by the confrontation clause of the Sixth Amendment, notwithstanding" any jury instruction "to consider that testimony only against [the] co-defendant." **Commonwealth v. Travers**, 768 A.2d 845, 847 (Pa. 2001) (citations omitted). The Court sought to prevent situations

where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect . . . . The unreliability of such evidence is intolerably compounded when the alleged accomplice . . . does not testify and cannot be tested by cross-examination.

*Id.*, *quoting* **Bruton**, 391 U.S. at 135-36. Subsequently, the High Court "approved the practice of redacting confessions of non-testifying co-defendants to remove references that expressly implicated the defendant." *Id.* at 847.

The Pennsylvania Supreme "Court has specifically approved of redaction and a limiting instruction as a means of eliminating any possible prejudice arising from the admission of a co-defendant's confession at a joint trial."

*Travers*, 768 A.2d at 848. In *Travers*, the Court concluded a co-defendant's redacted confession — which replaced references to the defendant with the phrase, "the other man" — "combined with the trial court's accurate and repeated cautionary charge," did not offend the Sixth Amendment or *Bruton*. *Id.* at 850-51.

After a thorough review of the record, the parties' briefs, the relevant law, and the well-reasoned opinion of the PCRA court, we conclude there is no merit to Appellant's first two claims. We emphasize Appellant's present arguments are near verbatim to that in his PCRA petition, and the PCRA court's opinion aptly addressed them. On appeal, Appellant does not address any of the court's particular reasoning, let alone specify why it was in error. We affirm on the basis of that court's opinion. *See* PCRA Ct. Op., 5/18/20, at 5-6 (law generally on ineffective assistance of counsel claims), 7-10 (reproduction of Williams' complete statement, as read aloud at trial), 11-12 (reproduction of trial counsel's alleged ineffective cross-examination of Detective Harkins and trial court's mid-testimony cautionary instruction[7]), 12-13 (analysis "that Williams' statement was properly redacted, comported with precedent and was fittingly admitted with cautionary instructions to the jury," and trial counsel's cross-examination did not violate *Bruton*).

_____

[7] *See* N.T., 11/22/13, at 172.

In his second issue, Appellant asserts the PCRA court erred in not finding direct appeal counsel "ineffective for failing to raise the denial of the motion to sever because redaction could not cure the fact that the jury could only conclude that both defendant[s'] statements referred to each" other. Appellant's Brief at 16 (capitalization removed). Appellant claims "prejudice because he was unable to confront witnesses against him." *Id.* at 17. In support, Appellant reproduces, verbatim, five pages of the legal authority cited in his first issue.

"The decision of whether to sever trials of co-defendants is within the sound discretion of the trial court. Both this Court and the United States Supreme Court have recognized that joint trials of co-defendants play a crucial role in the criminal justice system." ***Travers***, 768 A.2d at 846-47 (citations omitted).

We incorporate the PCRA court's discussion of Appellant's ***Bruton*** issue and conclude no relief is due. ***See*** PCRA Ct. Op. at 12-13. We further note the court's reasoning that: trial counsel **did** seek to sever the two co-defendants' cases; Appellant and Williams were both charged with conspiracy for the same incident; nearly all the "voluminous" evidence was admissible against each defendant; and because the trial "court correctly denied the . . . severance motion[, prior appellate] counsel cannot be deemed ineffective for failing to raise the issue on appeal." *Id.* at 13-14.

In his final issue, Appellant claims the PCRA court erred in denying his "petition without a hearing because trial counsel was ineffective for not objecting and seeking a curative instruction or a mistrial when Sergeant . . . Venit testified [Williams' vehicle] was well-known to police[.]" Appellant's Brief at 24 (capitalization removed). Appellant also avers that **he** "was stopped in this vehicle previously." *Id.* at 26, *citing* N.T., 11/22/13, at 44-45; N.T., 11/20/13, at 108. Appellant reasons this evidence "could only imply prior criminality" and thus it undermined his presumption of innocence. *Id.* at 24, 26.

We note: "In the context of an ineffectiveness claim, counsel's failure to request a cautionary instruction regarding evidence of other crimes or prior bad acts does not constitute *per se* ineffectiveness; '[r]ather, in order to obtain relief under such a claim, a defendant must still satisfy each of the three prongs of the test for ineffective assistance of counsel.'" **Commonwealth v. Weiss**, 81 A.3d 767, 798 (Pa. 2013) (citation omitted).

First, we find no record support for Appellant's claim the jury heard evidence that he was previously connected to Williams' car. None of Appellant's cited trial transcript pages support such a proposition. Instead, Officer Martella testified that when he conducted the traffic stop on October 15, 2010, Williams was the driver. N.T., 11/22/13, at 44-45. As stated above, the officer Martella made no mention of any other passengers and no reference to Appellant anywhere in his testimony. **See id.** at 42-48.

- 14 -

We adopt the PCRA court's reasoning on this issue, as well, and conclude that no relief is due. **See** PCRA Ct. Op. at 15 (finding Williams admitted the vehicle belonged to him, "there was no testimony [Appellant] was in the car previously, either when stopped by the sergeant or other times[;]" therefore "the complained of testimony was not connected to [A]ppellant, and counsel cannot be faulted for failing to object or to ask for a curative instruction").

For the foregoing reasons, we determine Appellant's claims of ineffective assistance of counsel are meritless, and the PCRA court's conclusion are supported by the record and free of legal error. **See Mitchell**, 141 A.3d at 1283-84. We thus affirm the order of the PCRA court dismissing his PCRA petition.

We direct that a copy of the PCRA court's May 18, 2020, opinion be filed along with this memorandum and attached to any future filings in this case.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: <u>4/12/21</u>

**IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **CRIMINAL TRIAL DIVISION** |
| | : | |
| | : | |
| **Vs.** | : | **363 EDA 2020** |
| | : | |
| | : | |
| **DAWUD ABDUL-HAKIM** | : | **CP-51-CR-0008191-2011** |

**Received**

**O P I N I O N**

MAY 18 2020

**O'KEEFE, J.**

Office of Judicial Records
Appeals/Post Trial

Dawud Abdul-Hakim appeals from the order denying his Post Conviction Relief Act Petition (hereinafter referred to as "PCRA" for the sake of brevity) pursuant to 42 Pa.C.S. § 9541 *et seq.*

**PROCEDURAL HISTORY:**

Defendant, Dawud Abdul-Hakim, was arrested on May 8, 2011, and charged with murder, robbery (three counts), conspiracy, violations of the Uniform Firearms Act, simple assault (two counts), and possessing an instrument of crime. The defendant was held over for court on all charges after a preliminary hearing on July 19, 2011. The first jury trial was held from September 27, 2012 through October 9, 2012, at which the defendant was convicted of firearms not to be carried without a license and possessing the instrument of a crime. When the jury deadlocked on the remaining charges, a mistrial was declared, and new trial scheduled. A second jury trial commenced on November 18, 2013 and continued through the 26th, wherein appellant was convicted of second degree murder, conspiracy and three counts of robbery. Mr. Abdul-Hakim was sentenced to the mandated life without parole, concurrent five to ten years for each

1

robbery and violating the Uniform Firearms Act. The Superior Court of Pennsylvania affirmed the judgement of sentence on November 6, 2015. *Commonwealth v. Abdul Hakim*, No. 1485 EDA 2014. *Allocatur* was denied on March 29, 2016. *Commonwealth v. Abdul Hakim*, No. 652 EAL 2015.

Appellant filed his PCRA petition on October 13, 2016, and counsel was appointed but later allowed to withdraw. New counsel was appointed who filed a *Finley*[1] letter. On August 22, 2017, the undersigned sent out notices of intent to dismiss to all parties pursuant to Pa.R.C.P. 907. The defendant requested an additional sixty days to respond to the notice which extension was granted and an additional amended petition filed on December 5, 2017. New counsel was appointed and another amended petition filed. On December 19, 2019, a dismissal order was improvidently entered and subsequently vacated on December 26th. 907 intent to dismiss notices were again sent to all parties on December 27th, and the petition dismissed on January 21, 2020. The dismissal was appealed the same day and a statement of matters complained of on appeal timely filed.

## STANDARD OF REVIEW:

When reviewing an order denying a PCRA petition, an appellate court looks to whether the PCRA court's decision is supported by the evidence of record and is free of legal error. *Commonwealth v. Spotz*, 624 Pa. 4, 84 A.3d 294 (2014). On questions of law, the standard of review is *de novo* and the scope of review is plenary. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa.Super. 2014). The court will grant great deference to the factual findings of the PCRA court and will not disturb those facts unless they have no support in the record. *Id.*

---

[1] *Commonwealth v. Finley*, 379 Pa.Super. 390, 550 A.2d 213 (1988).

2

## FACTS:

The trial court provided the factual history of the case as follows:

"On October 20, 2010, Appellant, Dawud Abdul-Hakim, and an unidentified male were invited by co-defendant, Kevin Williams ("Williams") to smoke weed in his car. At approximately 11:20 PM, Williams was driving west on Jackson Street in the City and County of Philadelphia when Appellant suggested they Rob three (3) men they saw walking north on Second Street towards Jackson Street. The three (3) men walking north on Second Street were childhood friends Jason Moncrief ("Moncrief"), Andrew Lillie ("Lillie"), and Decedent, Anthony DeMarco Jr. ("DeMarco"). Appellant had a .40 caliber Glock pistol on his person. The unidentified male told Williams to stop the car, said he would be right back, and instructed Williams to stay there. Appellant and the unidentified male exited Williams' car on to the sidewalk ahead of Moncrief, Lillie, and DeMarco, and walked slowly so the three (3) men could catch up. Williams backed his car onto nearby Philip Street where he could see Moncrief, Lillie, DeMarco, Appellant, and the unidentified male. Williams kept his car running in the middle of Philip Street and turned off his headlights.

As the two (2) groups converged, the unidentified male grabbed Moncrief and Appellant grabbed DeMarco, holding DeMarco at gunpoint. The unidentified male and Appellant directed Moncrief, Lillie, and DeMarco to give up their money, whereupon the unidentified male went into the pockets of Moncrief and retrieved $50. Appellant again told DeMarco to "Give it up". DeMarco refused to comply, and was hit in the back of the neck with the gun by Appellant. DeMarco then began to fight Appellant, punching him repeatedly and wrestling Appellant to the ground. During the fight Appellant dropped the gun. The unidentified male picked up the gun, told DeMarco to get off Appellant, then fired six (6) shots at DeMarco, hitting him four (4) times and hitting Appellant once (1) in the left hip. Lillie and Moncrief subsequently ran south on Second Street, Williams drove west on Jackson Street, while Appellant and the unidentified male ran west on Jackson Street.

DeMarco was shot one (1) time in the left flank; one (1) time in the left hip; one (1) time in the mid back, where the bullet fractured a vertebra, then passed through the thorax, esophagus, heart and sternum; and one (1) time in the upper left back, injuring his left lung. DeMarco was transported to Thomas Jefferson University Hospital, where he was pronounced dead at 12:07 AM by Dr. Jenoff. An autopsy was performed by Assistant Medical Examiner

3

Dr. Aaron Rosen, who determined the cause of death was multiple gunshot wounds. The manner of death was found to be homicide. At the time of his arrest, Appellant made a detailed statement after receiving his *Miranda* warnings." (Trial Court Opinion 12-1-2014, pp. 2-4).

## LEGAL DISCUSSION:

The standard and scope of review for the denial of a PCRA petition is well-settled. The appellate court examines a PCRA appeal in the light most favorable to the prevailing party at the PCRA level. The court's review is limited to the findings of the PCRA court and the evidence of record. Additionally, the reviewing court grants great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. In this respect, the appellate court will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. However, where the petitioner raises questions of law, the standard of review is *de novo* and the scope of review is plenary. *Commonwealth v. Henkel*, 90 A.3d 16, 20 (Pa. Super. 2014), *appeal denied*, 627 Pa. 771, 101 A.3d 785 (2014) (table) (citations and quotation marks omitted).

### *Failure to Hold a Hearing*

Appellant asserts that this court erred in summarily dismissing claims raised in his PCRA petition. (Statement of Matters Complained of on Appeal, p.1-2). Pennsylvania Rule of Criminal Procedure 907 provides the standard for dismissing a PCRA petition without a hearing:

> "(1) the judge shall promptly review the petition, any answer by the attorney for the Commonwealth, and other matters of record relating to the defendant's claim(s). If the judge is satisfied from this review that there are no genuine issues concerning any material fact and that the defendant is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings, the judge shall give notice to the parties of the intention to dismiss the petition and shall state in the notice the reasons for the dismissal. The defendant may respond to the proposed dismis-

4

sal within 20 days of the date of the notice. The judge thereafter shall order the petition dismissed, grant leave to file an amended petition, or direct that proceedings continue."

There is no absolute right to a post-conviction petition hearing. It is clear that a judge can dismiss an initial petition without a hearing if the court concludes that there are no genuine issues concerning any material fact, that the defendant is not entitled to post-conviction relief, and no purpose would be served by further proceedings. *Commonwealth v. Payne*, 794 A.2d 902, 906 (Pa.Super.2002) (citing *Commonwealth v. Jordan*, 772 A.2d 1011, 1014 (Pa.Super.2001)). The court may deny a defendant's request for an evidentiary hearing where the supporting factual allegations are "patently frivolous and is without a trace of support in either the record or from other evidence." *Id.* If "allegations of ineffectiveness of counsel are baseless or meritless then an evidentiary hearing is unnecessary and the unfounded allegations should be dismissed." *Commonwealth v. Clemmons*, 505 Pa. 356, 479 A.2d 955, 957 (1984). Furthermore, it is almost axiomatic that it is the defendant in a PCRA proceeding who bears the burden of proof and need meet that burden by a preponderance of the evidence. 42 Pa.C.S § 9543(a).

### *Ineffective Assistance of Counsel*

Abdul-Hakim has raised numerous issues contending counsel, both trial and appellate, were ineffective. The law is straightforward that counsel is presumed effective and a defendant claiming ineffective assistance of counsel bears the burden of proving otherwise. *Commonwealth v. Fears*, 624 Pa. 446, 86 A.3d 795 (2014); *Commonwealth v. Cross*, 535 Pa. 38, 634 A.2d 173 (1993). In order to overcome this presumption, a defendant must meet a three-component standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): First, the underlying claim must have arguable merit. *Commonwealth v. Rollins*, 558 Pa. 532, 542, 738 A.2d 435, 441 (1999); *Commonwealth v. Travaglia*, 541 Pa. 108,

5

661 A.2d 352, 356 (1995). Second, no reasonable basis must exist for counsel's actions or failure to act. In making this determination, the appellate court does not question whether there was a more logical course of action which counsel could have pursued, but rather did counsel's decision have any reasonable basis. *Commonwealth v. Rollins, supra,* 558 Pa. at 542, 738 A.2d at 441. Lastly, the defendant must establish that he suffered prejudice because of counsel's error, such that there is a reasonable probability that the outcome of the proceeding would have been different absent such an error. *Commonwealth v. Fears, supra,* 642 Pa. at 461, 86 A.3d at 804; *Commonwealth v. Lesko,* 609 Pa. 128, 15 A.3d 345, 373-74 (2011) (citing *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973, 975 (1987)). It is not enough for the defendant to claim that counsel could have taken different steps, but rather, he must prove that counsel's strategy was "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Dunbar,* 503 Pa. 590, 470 A.2d 74, 77 (1983); *Commonwealth v. Albrecht,* 510 Pa. 603, 511 A.2d 764, 775 (1986). Counsel is presumed to have rendered effective assistance, and, if a claim fails under any required element of the *Strickland* test, the court may dismiss the claim on that basis. *Commonwealth v. Vandivner,* 634 Pa. 482, 490, 130 A.3d 676, 680 (2015). To obtain relief under the PCRA, based upon a claim of ineffective assistance of counsel, a petitioner must establish by a preponderance of evidence that counsel's ineffectiveness "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

### Bruton v. United States.

Abdul-Hakim alleges that trial counsel was ineffective in repeatedly violating the mandates of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) and its

6

progeny, thereby impinging on appellant's Sixth Amendment's rights of confrontation and a fair trial, by references to appellant in co-defendant Williams' statements.

The United States Supreme Court held in *Bruton* that a defendant is denied his constitutional rights to confrontation and cross-examination when a non-testifying, unredacted, co-defendant's statement, identifying the defendant as a participant in the crime, is admitted at their joint trial. Our Pennsylvania courts have further clarified the law, that a non-testifying co-defendant's statement in which the defendant's name is replaced with "the other guy" or a similar term does not violate *Bruton* when combined with an instruction advising the jury that they may only consider the statement against the defendant who made the statement. *Commonwealth v. Cannon*, 610 Pa. 494, 22 A.3d 210, 218 (2011); *Commonwealth v. Miller*, 572 Pa. 623, 819 A.2d 504, 511-513 (2002); *Commonwealth v. Rivera*, 565 Pa. 289, 773 A.2d 131, 138 (2001); *Commonwealth v. Travers*, 564 Pa. 362, 768 A.2d 845, 850-51 (2001).

For the sake of completeness, a review of the prosecution's direct inquiry is in order and was as follows:

> "**Question:** Kev, I am Detective Morton, and this is Detective Holmes. We want to ask you about the shooting death of Anthony Demarco, 20-year old white male, that occurred on 10-20-2010 outside 224 Jackson Street at approximately 11:29 p.m. Are you willing to talk to us about this incident?
>
> **Answer:** Yes.
>
> **Question:** Can you tell us in your own words what information do you have in regards to this incident?
>
> **Answer:** I was driving my car. I was coming down Fifth Street going towards Wolf. I stopped at the stop sign when I saw a guy that was with this other kid.
>
> **Question:** What type of car were you driving?
>
> **Answer:** It was a four-door gray-colored Buick Le sabre
>
> **Question:** Who was the registered owner of this gray four-door Buick Le sabre?

7

**Answer:** The car is mines.

**Question:** Do you know your tag number?

**Answer:** I only know it's a Pennsylvania tag. I don't know the number.

**Question:** Can you describe what they were wearing?

**Answer:** One was wearing a dark hood with blue jeans. The other boy was wearing a blue hoody and dark blue jeans...

While stopped at the stop sign, I spoke to the guy. I asked him what's up. He said nothing, chillin. I asked him is he trying to smoke.

**Question:** What do you mean by smoke?

**Answer:** I asked if he wanted to smoke some weed with me.

**Question:** What time did you pick up these guys from Fifth and Wolf Street?

**Answer:** It was about 10:40 p.m....

He said, all right, and then they got into my car. One got in the front seat, and the other boy got in the back seat.

We turned on to Wolf Street going towards Fourth Street. I took Wolf Street all the way down to Swanson Street. I made a left turn on to Swanson Street and took it to Jackson Street.

I made a left turn on to Jackson Street, and then I turned into the parking lot that is under Interstate 95. We sat there and smoked. The guy in the back seat said they were trying to get somebody tonight before he go back to the town. He was talking to the other guy. He said yeah, me, too.

I asked him what they were talking about, Norristown? He said yeah. We got a little spot out there, meaning a place in Norristown.

After we smoked up all the weed, we pulled out of the parking lot back on to Jackson Street going towards Front Street.

**Question:** What did the boy in the back seat mean that he was trying to get somebody?

**Answer:** He was going to rob somebody tonight.

**Question:** How long were you guys in the parking lot smoking weed?

**Answer:** For about 40 to 45 minutes....

8

We went to Second and Jackson Street. The guy in the front seat spotted three white males coming down Second Street. The boy in the back seat said, let's get them right there.

I stopped at the street light; and when the light changed, I pulled off and started driving up Jackson Street....

The guy in the front seat – I'm sorry, the guy in the front told me to stop and let him out right here; I'll be right back. He told me to stay right there.

I stopped in the middle of the street. They got out of the car. They both ran in front of my car, and I saw the guy that was in the back seat was holding something in his right hand down by his right leg.

**Question:** Could you tell what this male was holding in his right hand?

**Answer:** No....

They ran to the sidewalk on the left side. I kept going up the street to Philip Street when I put the car into reverse and backed on to Philip Street and sat in the middle of the street with the car running.

**Question:** Were your headlights on or off when you backed down on to Philip Street?

**Answer:** I turned them off as I backed down Philip Street.

**Question:** Why did you turn your headlights off?

**Answer:** I knew that they was getting ready to rob those white boys. I didn't want my car to be seen, so I turned off my headlights.

**Question:** Why did they get out of the car?

**Answer:** They was going to rob the white boys....

I saw the white boys. They were down at Jackson Street walking towards Third Street. The guy that was in the back seat raised his hand to one of the white males, and then they started tussling. They fell to the ground.

The white boy was on top, and the other guy was on the bottom. The other one had the other white guy, and this guy had his hands up. He went over to help this boy that was on the ground tussling. He grabbed the gun from his boy, and then I saw him shoot the white boy.

**Question:** When the white boy and the other guy were tussling on the ground, did you hear any gunshots?

**Answer:** No.

9

**Question:** Can you describe the type of gun?

**Answer:** It was black, and it was loud. I don't know what type of gun it was.

**Question:** How many gunshots did you hear?

**Answer:** About four to five gunshots.

**Question:** How many white boys did you see on Jackson Street?

**Answer:** Three.

**Question:** How many white boys did they stop?

**Answer:** Only saw two. I don't know what happened to the other white boy.

**Question:** Did you see anything taken from the white boy that he had stopped?

**Answer:** I didn't see him take anything....

One took off first running down Jackson Street and made a left turn on to Third Street. I don't know where he went after that. The other guy, he got up off the ground and ran straight down Jackson Street towards Third Street, but he kept running straight down Jackson Street.

I pulled out on – I pulled out of Philip Street on to Jackson Street and went straight down Jackson Street. I made a right on to Seventh Street to Emily Street to my dad house.

**Question:** Detective Holmes is showing you a single black and white photograph. Do you recognize the vehicle in this photograph?

**Answer:** Yes. That's my car as I was driving down Jackson Street.

**Question:** Did you stop to pick them up?

**Answer:** No.

**Question:** Did you see or talk to them, with them, any time after this incident?

**Answer:** No.

**Question:** When did you find out that someone was shot and killed on Jackson Street?

**Answer:** The next day, my dad and his girl was talking about the white kid getting shot on Jackson Street.

**Question:** Did you tell anyone about the shooting?

**Answer:** No."

(N.T. 11-22-2013, pp. 77-84).

It is the defendant's contention that his attorney was ineffective by eliciting the following testimony from the detective highlighting references to this defendant:

> **Q.** "You can take that down. Now again you said you don't remember exactly when you took the last civilian interview, but let me ask you this.
>
> Other than Mr. Lillie and Mr. Moncrief, did you have any other interviews with any other eyewitnesses?
>
> **A.** There were no other interviews of eyewitnesses to the entire incident. However, there were other interviews of witnesses that saw parts of either the incident or flight or beyond flight.
>
> **Q.** Okay. So other than – so other than Mr. Moncrief and Mr. Lillie, you had the interview from the sergeant that lived on Third Street?
>
> **A.** Joe Black.
>
> **Q.** Right. You had the interview of the individual who parked his car up the street?
>
> **A.** Yes.
>
> **Q.** Now how about anybody else?
>
> **MRS. COELHO:** Objection.
>
> **THE COURT:** He can answer if he knows. Overruled.
>
> **THE WITNESS:** There were a number of interviews that were conducted.
>
> (N.T. 11-22-2013, p. 182).

The trial court provided the panel with the following cautionary instruction during the detective's testimony:

> "Now, ladies and gentlemen of the jury, I just want to give you a cautionary instruction. You've just heard the detective read a statement that is attributed to one of the defendants in this matter. That statement, the content of the statement, may only be used against the person who made the statement." (N.T. 11-22-2013, p. 172).

And again during her final instructions:

11

"You have also heard evidence that each defendant made a statement to the police. I instruct you that the contents of each statement can only be used against the maker of the statement. So the statement attributed to Defendant Williams can only be used against him, and the statement attributed to Defendant Abdul-Hakim can only be used against him." (N.T. 11-25-2013, p. 55).

Appellant contends that the jury could only conclude that those other interviews included the statement from the co-defendant, Williams, specifically identifying this defendant, in violation of *Bruton* and that any cautionary instruction was not sufficient to eradicate prejudice against this defendant. *Bruton v. United States, supra; Richardson v. Marsh,* 481 U.S. 200, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *Gray v. Maryland,* 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998). This same line of cases establish that if a co-defendant's statement can be redacted to omit the defendant's name, without obviously revealing the omission, a jury instruction to consider the statement only against the co-defendant who made it, is presumptively sufficient to protect a defendant's constitutional right of confrontation. *Gray v. Maryland, supra; Commonwealth v. Travers,* 564 Pa. 362, 768 A.2d 845, 851 (2001). Substituting a neutral phrase such as "the other guy" for the defendant's name is an appropriate redaction, with a limiting instruction and is sufficient to protect the defendant's confrontational rights. *Commonwealth v. Miller,* 572 Pa. 623, 819 A.2d 504, 511-13 (2002); *Commonwealth v. Cannon,* 610 Pa. 494, 22 A.3d 210, 218 (2011); *Commonwealth v. Travers,* 564 Pa. 362, 768 A.2d 845, 850-851 (2001); *Commonwealth v. James,* 66 A.3d 771, 777-78 (Pa.Super.2013); *Commonwealth v. McGlone,* 716 A.2d 1280, 1285 (Pa.Super.1998).

A review of the record clearly demonstrates that Williams' statement was properly redacted, comported with precedent and was fittingly admitted with cautionary instructions to the jury. The introduction of such evidence is squarely within the trial court's discretion and as the complained of cross-examination by appellant's counsel did not violate *Bruton* or its kindred

precedent, counsel cannot be faulted for properly conducting a complete and searching cross-examination of the detective.

## *Failing to Raise Denial of Motion to Sever*

Appellant's next grievance is that appellate counsel was ineffective in failing to claim that the trial court erred in failing to sever the two defendant's cases. First and foremost, it needs be noted that trial counsel moved to have the cases severed. The law is clear that the decision on whether to grant a motion for severance is addressed to the sound discretion of the trial court and will only be disturbed upon a showing of manifest abuse of discretion. *Commonwealth v. Payne*, 760 A.2d, 400, 404 (Pa.Super.2000) (citing *Commonwealth v. Chester*, 526 Pa. 578, 587 A.2d 1367 (1991)). Both the Pennsylvania and United States Supreme Courts have encouraged joint trials where the crimes charged against each of the defendants arise out of the same set of facts and virtually all of the evidence is applicable to both defendants, to conserve resources, promote judicial economy and enhance fairness to defendants. *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987); *Commonwealth v. Rainey*, 593 Pa. 67, 928 A.2d 215, 231 (2007). This is especially true when the defendants are charged with conspiracy. As has been noted by our Supreme Court:

> "It would impair both the efficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last tried defendants who have the advantage of knowing the prosecution's case beforehand. Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability." *Commonwealth v. Travers*, 564 Pa. 362, 768 A.2d 845, 847 (2001) (quoting *Richardson v. Marsh, supra* 481 U.S. at 210).

Clearly as a result of this preference, the burden is on defendants to "show a real potential for prejudice rather than mere speculation." *Commonwealth v. Gribble*, 580 Pa. 647, 863 A.2d, 455, 462; (2004); *Commonwealth v. Rivera*, 565 Pa. 289, 773 A.2d 131, 137 (2001); *Commonwealth v. Chester*, 526 Pa. 578, 587 A.2d 1367, 1372–73 (1991); Pa.R.Crim.P. 583. "Separate trials of co-defendants should be granted only where the defenses of each are antagonistic to the point where such individual differences are irreconcilable and a joint trial would result in prejudice." *Commonwealth v. Rainey, supra*, 928 A.2d at 232 (quoting *Commonwealth v. Lambert*, 529 Pa. 320, 603 A.2d 568, 573 (1992)). "Although antagonistic defenses are a factor for a trial court to consider in determining whether to grant a motion to sever, 'the fact that defendants have conflicting versions of what took place, or the extent to which they participated in it, is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together.'" *Commonwealth v. Rainey, supra*. (quoting *Commonwealth v. Gribble, supra*, 863 A.2d at 462).

A joint trial was clearly warranted in this case. Both were charged with conspiracy in the same incident. Nearly all the evidence was admissible against each defendant, and the evidence was voluminous. This court correctly denied the defendant's severance motion before trial and counsel cannot be deemed ineffective for failing to raise the issue on appeal.

Additionally, the law is clear that the decision as to what issues to raise on appeal is one of strategy and is left to the discretion of counsel, who is not required to raise every possible claim. *Jones v. Barnes*, 463 U.S. 745, 750-54, 103 S.Ct. 3308, 77 L.Ed.2d. 987 (1983); *Commonwealth v. Jones*, 572 Pa. 343, 815 A.2d 598, 613 (2002); *Commonwealth v. Showers*, 782 A.2d 1010, 1016 (Pa.Super.2001). Consequently, appellate counsel cannot be faulted for failing to raise this meritless issue.

14

## *Failing to Request a Curative Instruction.*

Appellant's final complaint is that counsel was ineffective in failing to object to and request a curative instruction when Sergeant Venit testified that the vehicle in which the defendant had previously been stopped was well-known to the police and had previously been stopped, thereby undermining the defendant's presumption of innocence and depriving this defendant of a fair trial. (Statement of Matters Complained of on Appeal, p. 2). The complained of testimony was as follows:

> "From that video and from my personal experience with this vehicle, it was an older model Buick with the left, far left brake light was missing, had been stopped previously, documented on 75-48, which is our form for vehicle investigations, and previously before the homicide. And this vehicle is well known to police in the area." (N.T. 11-20-2013, p. 108).

First, the co-defendant, Williams, admitted in his statement that the Buick belonged to him, and there was no testimony that this defendant was in the car previously, either when stopped by the sergeant or other times when it was well-known to the police. (N.T. 11-22-2013, pp. 77-78). There was no testimony that this defendant was arrested, detained or even present as a result of any car stop, nor was there any testimony that the reason the car was known to the police in the area was because of criminal activity. Therefore, the complained of testimony was not connected to the appellant, and counsel cannot be faulted for failing to object or to ask for a curative instruction.

Furthermore, as our Superior Court has declared:

> "Merely because a police officer knows someone or knows where they may be found does not suggest that the person has been engaged in prior criminal activity. A policeman may know someone because they reside in the same neighborhood or for any other number of reasons. We refuse to hold that a policeman's statement to the effect that he knew someone, knew his nickname, or was familiar with the person's whereabouts raises an inference of prior

15

criminal activity." *Commonwealth v. Sanders*, 296 Pa.Super. 376, 442 A.2d 817, 818 (1982).

For the jury to conclude that this statement referred to this defendant's prior criminal activity would require gross speculation on the part of the jurors and has routinely been disapproved by our appellate courts. *Commonwealth v. Riggins*, 478 Pa. 222, 230-231, 386 A.2d 520, 524 (1978); *Commonwealth v. Starks*, 484 Pa. 399, 409, 399 A.2d 353, 357 (1979); *Commonwealth v. Parker*, 957 A.2d 311, 320 (Pa.Super.2008). Moreover, for counsel to have objected would have highlighted the passing reference and counsel cannot be faulted for not wanting to emphasize the insignificant remark. *Commonwealth v. Weiss*, 622 Pa. 663, 81 A.3d 767, 798-799 (2013); *Commonwealth v. Hutchinson*, 571 Pa. 45, 811 A.2d 556, 561-562 (2002).

Accordingly, the dismissal of the petition by this court should be affirmed.

**BY THE COURT:**

J. SCOTT O'KEEFE, J.

**DATE: May 18, 2020**

16

# IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA : CRIMINAL TRIAL DIVISION
:
:
:
Vs. : 363 EDA 2020
:
:
:
DAWUD ABDUL-HAKIM : CP-51-CR-0008191-2011

### Proof of Service

I hereby certify that I am on this day serving the foregoing Court's Opinion upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114:

Defense Attorney: Stephen T. O'Hanlon, Esquire
Two Penn Center Plaza
1500 John F. Kennedy Boulevard
Suite 1410
Philadelphia, PA 19102

Type of Service: ( ) Personal (**X**) First Class Mail ( ) Interoffice ( ) Other, please specify

District Attorney: Lawrence Jonathan Goode, Esquire
Appeals Unit
District Attorney's Office
3 South Penn Square
Philadelphia, PA 19107

Type of Service: ( ) Personal ( ) First Class Mail (**X**) Interoffice ( ) Other, please specify

Date: May 18, 2020

Allison M. O'Keefe, Law Clerk

17